WILLIAM DUDLEY WALTON, SR., *v.* WILLIAM DUDLEY WALTON, JR.

1. HOMESTEAD. *Conveyance by wife. Code* 1892, § 1985. *Husband living with wife. Abandonment.*

A husband is living with his wife within the meaning of code 1892, § 1985, declaring the deed of the wife alone to her homestead invalid if the husband be living with her, unless he has ceased to live with her with intent never to return.

2. SAME. *Temporary absence. Code* 1892, § 1985.

A husband, under pecuniary difficulties, may absent himself from his wife and home, in an effort to better provide for himself and family, without ceasing to live with his wife, within the meaning of the statute, if he entertains the intent to return as soon as circumstances will reasonably permit.

3. SAME. *Intent to return conditional. Code* 1892, § 1985.

In such case the husband's absence is not within the meaning of the statute, even if his intent to return be subject to a purpose of having his wife join him should it develop that they can better their condition by removing from the homestead, securing another elsewhere.

FROM the chancery court of Monroe county.

HON. BAXTER McFARLAND, Chancellor.

William Dudley Walton, Jr., the appellee, was the complainant in the court below; his father, William Dudley Walton, Sr., the appellant, was defendant there.

Walton, Sr., owned and lived on the property in controversy with his family, consisting of his wife and eleven children; the appellee, Walton, Jr., being the oldest son. After full conference with his family, Walton, Sr., determined to go to Florida to accept a position offered there from which he could earn something towards the support of his family; and, to get money to pay his expenses to Florida, he and his wife executed

a deed of trust on the homestead to secure a note for one hundred dollars, borrowed of one Johnson, most of which was turned over to the family. Walton, Sr., went to Florida, and, while absent, the deed of trust was foreclosed, and Mrs. Walton, the wife, bought at the trustee's sale, and afterwards conveyed the property to Walton, Jr., the appellee; all this without the knowledge of the appellant. Just before his wife died, Walton, Sr., returned, and resumed actual possession of the homestead. Walton, Jr., filed his bill in the chancery court seeking confirmation of his title, and a writ of assistance to put him in possession. A decree was rendered in accordance with the prayer of the bill, from which Walton, Sr., appealed to the supreme court.

*Clifton & Eckford*, for appellant.

Appellee had never abandoned his family or his homestead. He was still living with his wife in contemplation of the law. The land in controversy was still the homestead and the deed of the wife to appellee was void, as appellant did not join in it. Code of 1892, § 1895.

Appellant had no other homestead, and has not had since 1868, a period of thirty-one years, and, because temporarily absent, at a place to which he had gone with the consent and approbation of his wife and adult children to better his and their condition, the law will not permit him to be deprived of it by such a fraudulent scheme as the one concocted by appellee.

The weight of authority holds that the abandonment of wife and homestead is a matter of intention. To be living apart in contemplation of the statute the husband must be separated from the wife, occupying another homestead with the purpose and intention of abandoning the wife. *Ross* v. *Porter*, 72 Miss., 361; *Scott* v. *Scott*, 73 Miss., 575; *France* v. *Bell*, 71 N. W. Rep., 984; *Larson* v. *Butts*, 35 N. W. Rep., 190; *Potts* v. *Davenport*, 79 Ill., 455; *Campbell* v. *Adair*, 45 Miss., 170.

*Houston & Reynolds*, for appellee.

Even if the statement be true that Walton, Sr., never intended to abandon his family, he certainly abandoned this homestead. For he swears that he went to Florida, saying, "If I could better my condition there and could get a home and do better my wife was to come to me." He left his Mississippi home with no present intention of returning. In fact he had the intention not to return. It ceased to be a homestead immediately when he left for Florida, because the mere reservation of right to return in future and occupy land will not constitute it a homestead. *Thompson* v. *Tillotson*, 56 Miss., 36–39; *Finley* v. *Sanders*, 98 U. S., 462; 9 Am. & Eng. Enc. L., 498, 499.

In appellant's case the intention to return home was contingent. Yet, as we understand the law, when a person removes from his home, in order to preserve homestead rights therein, the *animus revertendi* must exist at the time of his departure. *Lehman* v. *Bryan*, 67 Ala., 558; 9 Am. & Eng. Enc. L., 488, note.

WOODS, C. J., delivered the opinion of the court.

Section 1985, code of 1892, is in these words: "A conveyance, mortgage, deed of trust, or other incumbrance of the homestead, where it is the property of the wife, shall not be valid or binding unless signed and acknowledged by the owner and the husband, if he be living with his wife."

The only question necessary to be considered by us is, was the appellant living with his wife at the time of the conveyance of the lands in controversy by the wife, Mrs. Walton, Sr., to the appellee? The evidence shows that in January, 1893, the appellant, being unable to properly support his family, went to Florida to seek employment, with a view to supplementing the insufficient revenues derived from the little farm constituting the homestead, and he thus went with full consent of his wife and the children who had reached years of discre-

tion. It seems clear to us that the appellant, in thus leaving his family, was not deserting or abandoning his wife and children, nor with a settled determination never to return. The very statement contained in appellant's deposition, to the effect that if he could better his condition in Florida, and could there get a home and do better (than in Mississippi), his wife was to go to him, and upon which counsel for appellee dwell with emphasis in their argument on this branch of the case, demonstrates that there was no desertion or abandonment on the part of the husband of his wife and family, but only an intention, in certain contingencies remote and problematical in the extreme, and which, in fact, never had a prospect of realization, to remove his family to Florida. The necessary implication from this statement, contained in appellant's deposition, is that he intended to return to Mississippi unless two events could be brought about, viz., that he could better his condition in Florida, and could secure a home there, and neither event ever transpired. Moreover, the appellant swears that he never intended to change his domicile, and that he uniformly refused to qualify himself for or perform any acts of citizenship in Florida, though requested by persons there to do so, because he regarded himself as a citizen of Mississippi.

When the conveyance of the homestead was made, in a little less than eighteen months after the departure of the husband from this state for Florida, and during this period, the transcript before us fails to disclose that the absent husband, or the wife and children at home, had any thought of an abandonment and desertion of the family by the husband.

It is true that the appellant did not return to his family and home until the year 1896, but his protracted absence is perfectly explained by him in his evidence, and there is not a scintilla of proof elsewhere in the record which casts suspicion on his explanation.

On two former occasions the appellant had gone to California and the Indian Territory on the same quest which carried him

later to Florida. On one of these occasions he was absent from home and family for a year. Was there abandonment and desertion then? There is no one who hints a suspicion of that sort. His efforts in California were successful, and he is shown to have fairly divided his earnings while in that state with his family. For the two or three months following his arrival in Florida, and when he had steady employment at fair wages, he sent about half his earnings to his family. Afterwards, and when with fitful or no employment, he was able to send only pitiful little sums to his children, and the sending of these pitiful sums now and then left the unhappy father without a cent for his own use. Is abandonment and desertion of one's family to be scouted where success crowns the absent husband's labors, but to be assumed where misfortune and disappointment mock his efforts and blast his hopes?

In legal contemplation the husband is living with his wife, though driven by stress of pecuniary difficulties to absent himself from wife and home in an effort to better provide for his family, and ceases to live with the wife only when, with intention never to return, he deserts or abandons her. The agent of his country, in diplomatic service in foreign lands, the merchant, in the prosecution of his business and to better his fortune, on the islands of the sea, and the traveler for pleasure or in the interest of science in the polar regions, are each and all living with their wives and in their homes, in the meaning of our statute.

The decree should have been for appellant, but any sum that may be found to be due appellee on an accounting between the parties, for money advanced by appellee to release the land from the Johnson deed in trust, as well as for money advanced by appellee in payment of taxes due on the lands, should be held to be a charge on the lands. Of course, on such an accounting, the appellee should be charged with any rents and profits derived from the lands, and with the proceeds of any personal property belonging to appellant which the appellee may be shown to have disposed of or converted to his own use.

*Reversed and remanded.*