Division B. Feb. 12, 1951.

No. 37811 (50 So. (2d) 378)

Kermit R. Cofer, and James Stone & Sons, for appellant.

812

Chester L. Sumners, and R. L. Smallwood, Jr., for appellee.

Alexander, J.

Appellant filed bill for divorce upon the ground of desertion and sought further relief by way of alimony and solicitors' fees. Plea of res judicata was interposed setting up decrees rendered in two similar suits between the parties dismissing both bills. The first two suits

were grounded upon allegedly habitual cruel and inhuman treatment. The second suit set up a similar plea invoking the dismissal of the first bill. A decree overruling the plea was reversed and the bill dismissed. 202 Miss. 500, 32 So. (2d) 358.

A chronology of events is in order. The first bill was filed May 23, 1945, and dismissed May 29, 1945. The second bill was filed June 7, 1945, and, as amended, prayed for divorce and permanent alimony. Temporary alimony was allowed, and as will be later mentioned was paid up to the date of a decree of an Arkansas court granting a divorce to appellee. This last action was begun September 14, 1945, and decree of divorce granted November 27, 1945.

It will be seen that the proceedings in Arkansas were had during the pendency of appellant's second suit in Mississippi. This circumstance led to the proviso in our opinion in the second suit that the dismissal of the bill "is without prejudice to appellee to seek such adjudication of the matter of the foreign divorce as she may be advised is proper."

Bill in the instant case was filed April 21, 1949. Plea of res judicata was sustained and a similar plea was interposed to an amended bill but not acted upon by the chancellor. In such amendment, appellant set out the Arkansas proceedings as part of her case evidently in order to forestall the defendant in using such foreign decree defensively. The decree here appealed from adjudicated only the validity of the foreign decree and this is the sole point for our decision.

The applicable Arkansas statute is Section 34-1208, Arkansas Statutes, and is as follows:

"Matters which must be proved.—The plaintiff, to obtain a divorce, must prove, but need not allege, in addition to a legal cause of divorce:

"First. A residence in the State for three (3) months next before the final judgment granting a divorce in the

action and a residence for two (2) months next before the commencement of the action.

"Second. That the cause of divorce occurred or existed in this State, or if out of the State, that it was a legal cause of divorce in this State, the laws of this State to govern exclusively and independently of the laws of any other state to the cause of divorce."

A literal acceptance of mere residence as an adequate qualification for establishment of jurisdiction was manifest in Squire v. Squire, 186 Ark. 511, 54 S. W. (2d) 281. Gradual recession from this construction, evidently under pressure of Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366, reached the point where in Cassen v. Cassen, 211 Ark. 582, 201 S. W. (2d) 585, 587, the Squire case was overruled. The court used the following language:

"So, now, we overrule Squire v. Squire, supra, insofar as it holds that a person who comes to this state for the purpose of obtaining a divorce and who does not have the animus manendi (which has always been held an essential ingredient of residence), may be said to be a bona fide resident of this state; and by 'bona fide residence', we mean the same as domicile. We quote from, and adopt as our own and as ruling in this state, the language of the United States Supreme Court in Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 1095, 89 L. Ed. 1577, 157 A. L. R. 1366: 'Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil. . . .

"This essential as to bona fide residence must exist, not only at the time the decree is rendered, but also must have existed at the time the suit was filed. . . .

"Tested by the rule of these cases, the appellant failed to prove that he was a bona fide resident of Arkansas at the time his suit was filed; and his subsequent affirmative acts, in an endeavor to establish such residence, cannot be allowed any retroactive effect."

 █ Thus, the prerequisite of bona fide domicile, which is residence with an intent to remain, conforms to the test laid down in Hall v. Hall, 199 Miss. 478, 24 So. (2d) 347.

We proceed, therefore, to an examination of the testimony. Appellee lived at Oxford, Mississippi in 1918, moved to Texas in 1922, and returned to Oxford in 1928, where he lived and maintained a homestead. On December 30, 1944, the day prior to his marriage to appellant, he transferred by deed to his daughter this homestead and all its furnishings. The stated consideration was love and affection. Despite this conveyance, which was withheld from record until June 15, 1945, appellee on January 15, 1945, made application for homestead exemption in his own name, designating it as his own. September 14, 1945, appellant filed suit for divorce in the Chancery Court of Craighead County, Arkansas, and final decree was awarded November 27, 1945. December 11, 1945, appellee returned to Oxford and voted as a citizen thereof in a municipal election. June 15, 1945, he conveyed to his son all the remaining property he owned in the Town of Oxford. December 8, 1947, the son reconveyed all or a greater part of this property to appellee, and on the same date his daughter reconveyed to him the homestead property for a stated consideration of one dollar. The water and light bills covering this property for the year 1945 were paid by appellee. So much for the evidence by records.

Appellee left Mississippi the latter part of June 1945 and procured employment in West Memphis, Arkansas. He concedes that this location was selected with no purpose to establish residence in that state. After thirty days he was sent by his employer to Jonesboro, Arkansas. This location was selected by his employer for reasons of its own. At this location he maintained himself chiefly in rooming houses and spent most of his time, except weekends, traveling the surrounding territory. In Arkansas he paid no taxes, established no voting status,

and acquired no property. Automobile license was purchased outside that state. His effects were restricted to personal luggage and he drove his own car. No other household effects, furniture or equipment were taken. His bill for divorce was filed, as stated, September 14, 1945, which was approximately the earliest date under the Arkansas statute. He remained in that state until the fall of 1946, although he left Jonesboro the preceding spring. He has never returned to that state.

In reply to an inquiry as to where he considered his home to be, he stated ''To be frank with you I haven't lived anywhere for three or four years, I was just staying.''

Conceding that the significance of each of these circumstances has been subjected to attempted and asserted explanation or defense, it is clear that his migration was rather to leave Mississippi than to reside in Arkansas. His own explanation was that it was embarrassing to him to remain at his home. ██ ██ A prerequisite to the acquisition of a new domicile is an intent to abandon the old. State of Texas v. Florida, 306 U. S. 398, 59 S. Ct. 563, 830, 83 L. Ed. 817, 121 A. L. R. 1179; In re Dorrance's Estate, 309 Pa. 151, 163 A. 303, certiorari denied, Dorrance v. Martin, 298 U. S. 678, 56 S. Ct. 949, 80 L. Ed. 1399. It is evident that during this period appellee was absent in body but not in spirit, and that the strings by which he held himself bound to his homestead, through their very elasticity, exerted a continual centripetal pull toward the constant axis about which his activities revolved. This was Oxford. During all this period there was pending in this State the litigation in the second suit for divorce filed by his wife. In this latter cause, it is stated as a finding in the opinion of the chancellor that appellee was exerting every effort to avoid paying the alimony decreed in that cause and the inferences are inescapable that he did not undertake to return to this State until he had paid the arrears of such alimony up to the date of the Arkansas decree.

██ ██ We are of the opinion that this case is controlled by Hall v. Hall, supra, wherein a stronger case was made for the absconding husband. The foreign decree is not therefore entitled to full faith and credit by us since there was no bona fide intent to establish a domicile animo manendi. The learned chancellor, in evident reliance upon the literal language of the foreign statute, undervalued the requirements of residence and overestimated the elements of waiver incident to the failure of appellant to respond to constructive notice of the Arkansas proceeding or make personal defense thereto. We can and do adjudge that the Arkansas Court was without jurisdiction of the marital status of the parties and, regardless of the effect of the foreign decree as an adjudication in that state, we may not and do not recognize its validity here.

We come to a consideration of the pending litigation here. As we have shown, there was no ruling upon the plea of res judicata to the amended bill and only the validity of the Arkansas decree was adjudicated.

██ ██ The instant case is based upon grounds which did not exist and could not have existed at the time the second suit was filed by appellant. She is therefore free to pursue such action and such incidental relief as may, in the light of conditions existing at the time of the filing of her bill herein, be found appropriate. Cliburn v. Cliburn, Miss., 48 So. (2d) 126, does not control.

Reversed and remanded.