## LYNCH *v.* LYNCH.

Mar. 23, 1953

No. 38557 25 Adv. S. 27 63 So. 2d 657

*Kermit R. Cofer* and *Jas. Stone & Sons,* for appellant.

*Chester L. Sumners* and *R. L. Smallwood*, for appellee.

74

KYLE, J.

This case is before us on appeal by Mrs. Ruth Bailey Lynch, complainant and cross defendant, from a decree of the chancery court of Lafayette County dismissing her bill of complaint for divorce and granting to L. G. Lynch, the defendant and cross-complainant, a divorce on the ground of wilful, continued and obstinate desertion for a period of more than one year.

This is the third time the divorce proceedings between these parties have been brought before this Court for review. See Lynch v. Lynch, 202 Miss. 500, 32 So. 2d 358; Lynch v. Lynch, 210 Miss. 810, 50 So. 2d 378.

The record shows that the appellant and the appellee were married on December 31, 1944, and that they separated on May 15, 1945, when the appellant left the appellee's home in the City of Oxford and returned to her mother's home at Coffeeville. The appellant filed her first suit for divorce on May 23, 1945, alleging as grounds for divorce habitual, cruel and inhuman treatment. The court sustained a demurrer to the bill of complaint in that cause and entered an order on May 29, 1945, dismissing the complainant's bill, but allowing the complainant sixty days within which to amend her bill, if she desired to do so. No amendment to the bill was filed. But, on June 7, 1945, the appellant filed a new petition against the appellee under a new cause number asking for separate maintenance and support; and on August 6, 1945, the appellant amended her petition and converted the same into a second bill for divorce, alleging again as grounds therefor habitual, cruel and inhuman treatment.

The appellee left the City of Oxford sometime during the latter part of the month of June, 1945, and went to Memphis, Tennessee, where he obtained employment with a plumbing and heating company, which carried on business activities in West Tennessee and in Arkansas and southeast Missouri. He remained in Memphis a few weeks for the purpose of learning the duties of his em-

ployment and then proceeded to Jonesboro, Arkansas; and on September 14, 1945, he filed a suit for divorce against the appellant in the Chancery Court of Craighead County, Arkansas. After the issuance and publication of a warning order and the mailing of a copy of the complaint to the appellant, presumably in compliance with the requirements of the Arkansas divorce statute, a decree of divorce was granted to the appellee by the Arkansas court on November 27, 1945.

On April 11, 1946, the appellant filed an amendment to her second bill for divorce in which she alleged the facts concerning the granting of the Arkansas divorce and challenged the validity of the Arkansas divorce on the ground that the appellee was not a bona fide resident of the State of Arkansas at the time the divorce was granted and that the Arkansas court had never acquired jurisdiction of the parties for the purpose of granting the divorce. On November 15, 1946, the appellee filed a motion to dismiss the appellant's second bill for divorce on the ground that the charges alleged in the second bill were the same as the charges alleged in the first bill, to which a demurrer had been sustained, and that the matters alleged in the second bill were res judicata. The appellee also filed a formal plea of res judicata. The chancellor overruled the appellee's motion and his special plea of res judicata, and granted an appeal to this Court to settle the controlling principles of law. On October 27, 1947, this Court reversed the decree of the chancellor and dismissed the appellant's amended bill, but without prejudice to the appellant's right ''to seek such adjudication of the matter of a foreign divorce as she may be advised is proper.'' See Lynch v. Lynch, 202 Miss. 500, 32 So. 2d 358.

On April 21, 1949, the appellant filed her third suit for divorce, alleging as grounds for divorce willful, continued and obstinate desertion for a period of one year. She also alleged that there had been a substantial change

in her economic condition since 1945, and she asked for the allowance of alimony. To this suit the appellee interposed a plea of res judicata, which the court sustained. The appellant was then allowed thirty days within which to amend her bill, and on May 27, 1949, the appellant filed an amended bill. In her amended bill the appellant set forth in detail the facts concerning the granting of the Arkansas divorce, and alleged that the Arkansas divorce was invalid for the reasons set forth in her amended bill; and the appellant asked that the Arkansas divorce be annulled by a proper decree of the court and that she be granted a decree of divorce on the ground of desertion and that she be awarded alimony. The appellee answered the amended bill, and in his answer incorporated another plea of res judicata and a plea in abatement. The appellee denied that the Arkansas decree of divorce was fraudulently obtained or was invalid, and averred that the decree was valid and was entitled to full faith and credit, under the provisions of Article IV, Section 1, of the Constitution of the United States. The appellee denied that he had deserted the appellant, and averred that on the contrary the appellant had left his home on May 15, 1945, with no intention of returning, and had never returned or offered to return; and the appellee asked that the appellant's suit be dismissed.

The cause was heard first on the issue presented by the bill and answer as to the validity of the Arkansas divorce decree. The chancellor held that the Arkansas divorce decree was valid and entitled to full faith and credit under the provisions of Article IV, Section 1, of the Constitution; and the chancellor entered an order dismissing the original and amended bills of complaint with prejudice. From that decree the appellant prosecuted an appeal to this Court. This Court, on February 12, 1951, reversed the decree of the chancellor and held that the decree of divorce granted to the appellee by the Arkansas Court was not entitled to full faith and credit

in Mississippi; and this Court remanded the cause to the lower court for further proceedings in conformity with the opinion rendered. See Lynch v. Lynch, 210 Miss. 810, 50 So. 2d 378.

On April 27, 1951, the appellee filed an amended answer and cross bill, in which he denied that he had deserted the appellant, as alleged in her amended bill, and in which he charged that the appellant had deserted him on May 15, 1945, without cause, and had thereafter refused to live with him; and the appellee asked that he be granted a divorce on the ground of desertion. The appellant filed an answer to the cross bill, and the cause was heard by the chancellor at the November 1951 term of the court, upon the pleadings and proof.

At the conclusion of all of the testimony the chancellor stated his findings of fact and his conclusion of law. The chancellor found that the appellant had wholly failed to establish her grounds for divorce; and the chancellor stated that, in his opinion, from her own testimony, the appellant was not entitled to a divorce on May 15, 1945, and that nothing that had occurred since that time would as a matter of law give her grounds for a divorce. The chancellor referred to the suit for divorce filed by the appellee in the State of Arkansas, in September, 1945, and in answer to the argument made by the appellant's attorneys that the filing of that suit showed that the appellee had abandoned the appellant, the chancellor stated that the appellant had already abandoned the appellee by the filing of her suit for divorce against the appellee during the month of May, 1945.

The chancellor stated that in his opinion the parties ought to be divorced; and the chancellor rendered a decree denying the relief prayed for in the appellant's bill and granting to the appellee an absolute divorce, as prayed for in his cross bill. From that decree the appellant prosecutes this appeal.

The first point argued by the appellant's attorneys in their brief is that the chancellor erred in sustaining the

appellee's motion to exclude the evidence offered on behalf of the appellant and dismiss the appellant's bill of complaint. The appellant's attorneys say that the motion to exclude was made at the conclusion of the testimony offered on behalf of the appellant, and that the chancellor in ruling on the motion was required to accept all of the appellant's testimony, together with all reasonable inferences to be drawn therefrom, as true. █ But there is no merit in this contention, for the reason that, when the motion was made, the chancellor reserved his ruling on the motion and proceeded to hear the testimony offered on behalf of the appellee; and it was not until after the chancellor had heard all of the testimony that he announced his ruling on the motion. It is clear from the chancellor's opinion and the decree itself that the chancellor's decision announced at the conclusion of the hearing was based upon all of the testimony, and it should be so considered on this appeal.

The next point argued by the appellant's attorneys in their brief is that the chancellor erred in refusing to grant the appellant a divorce on the ground that the appellee had been guilty of willful, continued and obstinate desertion for the space of one year. No claim is made that the separation was caused by the appellee leaving the appellant. But the appellant's attorneys contend that the appellee's conduct toward the appellant was such as to justify the appellant in leaving the appellee.

The proof shows that the appellant left the appellee's home in the City of Oxford on May 15, 1945, and went back to her mother's home in Coffeeville, while the appellee was away from home on a business trip to Georgia, and that the appellant thereafter refused to return to the appellee's home, although requested to do so, and that a few days after leaving the appellee's home the appellant filed her first suit for divorce.

It appears from the record that prior to her marriage to the appellee the appellant, who was a qualified teacher

in the public school system, had lived with her mother in her mother's home at Coffeeville. And about two months after the appellant's marriage her mother came to Oxford to visit her. The visit lasted only a few days and the mother left to go to Kansas City to obtain medical treatment and to visit another daughter, who lived in Kansas City. The appellant accompanied her mother on her trip to Kansas City and remained there with her for a period of three or four weeks. The appellant then returned to her home in Oxford, leaving her mother in Kansas City with her sister. While her mother was still in Kansas City the question arose as to what arrangement should be made to have her properly cared for after she returned to Mississippi. The appellant wished to bring her mother to Oxford to live with her. The appellee was definitely opposed to an arrangement of that kind. The evidence is conflicting as to what was said by each of the parties while the matter was being discussed. But the appellant testified that the appellee finally said to her, "I think you may as well take her down home and take care of her down there and live down there." The appellant also testified that the night before the appellee left on his trip to Georgia she said to him, "Well, if you want me to go down home, I'll do that, and I will be gone when you get back." The appellant stated that her husband's reply was, "Well, that's fine, if you are gone when I get back."

The appellee denied that he had made such statements, or that he had ever told the appellant to leave. And the appellant's testimony on this point is somewhat weakened by her own account of what took place after the appellee's return from his trip to Georgia. According to the appellant's own testimony, after the appellee got back from his trip to Georgia he immediately called his wife on the telephone and asked her if she was coming back on the bus that afternoon. She said, "No, we have things to talk about first. * * * You come down here, besides I have too much baggage to take up on a bus."

The appellant admitted that the appellee had made several attempts to induce her to return to the matrimonial domicile after the separation had taken place, and that she had declined to do so. In giving an account of an interview which she had with him in her mother's home at Coffeeville on Sunday night after the filing of her first suit for divorce, the appellant stated that the appellee asked her to come back to him at that time, and that she refused to agree to go back. She said that she was ready to go back, but that she had to feel that she was wanted, and that the appellee did not say that he loved her and that he did not say that he was sorry.

The appellant's attorneys do not claim that the appellee compelled the appellant to leave the matrimonial domicile or that the appellee refused to permit her to return. But they claim that the appellant left because the appellee told her to leave, and that she refused to return because the appellee wanted her to abandon her aged mother. And, upon the basis of these claims, the appellant's attorneys contend that the appellant was justified in leaving the appellee's home and in refusing to return, and that the appellee himself was guilty of constructive desertion. But this contention cannot be sustained for the reasons, first, that on the disputed questions of fact the chancellor found against the appellant, and second, that the reason assigned by the appellant herself for her refusal to return to the appellee's home was not sufficient to justify her refusal to return.

Constructive desertion is defined in 27 C. J. S., p. 567, Divorce, par. 360, as follows: "There is a constructive desertion, entitling the innocent party to a divorce for desertion, where an existing cohabitation is brought to an end by the misconduct of one of the spouses. Where one spouse compels the other to leave the marital home, or refuses to permit the other to return to it, the other spouse is entitled at the expiration of the statutory period to a divorce upon the ground of desertion. The spouse

who by his or her act intentionally brings the cohabitation to an end is guilty of desertion, regardless of which party leaves the home. Although there are some authorities which hold that a spouse who leaves the matrimonial domicile, unless compelled to by physical force, cannot obtain a divorce for desertion, the rule more generally followed is that where a spouse intentionally brings the cohabitation to an end by misconduct which renders the continuance of the marital relation so unbearable that the other leaves the family home, the former, and not the latter, is the deserter and may obtain a divorce on that ground.''

This Court, in the case of Griffin v. Griffin, 207 Miss. 500, 42 So. 2d 720, recognized the doctrine of constructive desertion, but in its opinion said: ''We accept the principle but hold that it will not be applied except in extreme cases.''

The principle of constructive desertion on the part of the husband was invoked as a defense by the wife in a suit filed against her for divorce on the ground of desertion in the case of Fulton v. Fulton, 36 Miss. 517, which is cited by both parties in their briefs on this appeal. In that case the appellant sued the appellee for a divorce on the ground of desertion. The strained relations between the parties had been brought about by the action of the husband in prohibiting his wife's son by a former marriage from visiting in his home. The appellee, who had gone to her doctor's home for medical treatment after a severe illness, refused to return to the home of her husband unless the husband agreed to receive her son as a visitor in the home. There was a decree in favor of the defendant wife, and the complainant husband appealed. The decree of the lower court was reversed and judgment was rendered by the appellate court in favor of the complainant, and in its opinion the Court said: ''The legal right of the appellant, as husband, to prescribe who shall be received as guests or visitors at the matrimonial man-

sion, is not to be controverted. In this instance it cannot be said that this authority was either wantonly or harshly exercised, or for insufficient reasons. Under these circumstances, however much we may be inclined to palliate the conduct of the appellee, her abandonment of home and desertion of the appellant admit of no legal justification.''

In the case that we have here the controversy between the parties related to the subject of a permanent place of residence for the appellant's mother. The record shows that the appellant's mother, at the time of the marriage of her daughter, was living in her own home at Coffeeville; and there is no evidence in the record to indicate that the appellant's mother wished to live in the appellee's home with her daughter as a permanent member of the family. But the appellant wished to have her mother come and live with her in the appellee's home. The appellee was unwilling to agree to have his wife's mother move into the home and live there as a permanent member of the family. The appellee testified that he had offered to take the appellant's mother into the home for a period of three months each year, but he thought that the other five children should care for her during the remaining nine months. He also stated that he had offered to pay his pro rata share of the cost of hiring an attendant to stay with the mother in the home at Coffeeville, if the other children would agree to the plan and make similar contributions. But neither of those offers was acceptable to the appellant; and when the appellee again stated his objection to assuming full responsibility for the care of the mother, according to the appellee's testimony, the appellant said: ''I know what I'll do, I'll go home and take care of mother and make you pay me alimony.''

The chancellor in commenting upon the testimony said that neither the complainant nor the defendant testified to any unkind act on the part of the other, and that, ac-

cording to the testimony of the appellee, there had been no unpleasantness that would amount to cruel treatment of any kind in their relations with one another. "He says he never spoke an unkind word to her and she never spoke an unkind word to him." And the chancellor stated that the whole trouble seemed to revolve around the question of her mother.

We have made a careful study of the record, and in our opinion the appellant's proof was clearly insufficient to make out a case of constructive desertion on the part of the appellee at the time of the separation of the parties in May, 1945. ▮▮ No case has been cited by the appellant's attorneys, and we have found no case ourselves, which holds that a husband can be deemed guilty of constructive desertion merely because he refuses to agree to have his wife's mother come into the home and live there as a permanent member of the family.

But the appellant's attorneys say that, even though the appellant may have left the appellee's home without justifiable cause, it was the duty of the appellee to seek a reconciliation. This contention can be disposed of with only a brief additional comment. The record shows that the appellee made several efforts to bring about a reconciliation both before and after the first divorce suit was filed, and these efforts were entirely unsuccessful. The appellant steadfastly refused to return to the appellee's home, and manifested her fixed determination to put an end to the marital relationship by filing in rapid succession two suits for divorce. We think that under these circumstances the appellee was under no duty to make any further effort to induce the appellant to return. The appellant was a woman of mature age, and it was manifest that further efforts on the part of the appellee to induce her to return would be unavailing.

▮▮ "The failure to seek a reconciliation has been excused where it is manifest from the facts and circumstances of the desertion that any efforts made to induce a

return would be unavailing.'' 27 C. J. S., p. 576, Divorce, par. 38 b (2) ; and cases cited.

As indicated above, the testimony does not support the contention made by the appellant's attorneys in their brief that the negotiations attempted for the purpose of effecting a reconciliation failed because of the appellee's unreasonable requirement that the appellant abandon her ill and aged mother; and the charge itself is refuted by the findings of the chancellor.

██ The next point argued by the appellant's attorneys is that, if it be conceded that the appellant was the one who was first guilty of desertion, the appellee's action in filing a suit for divorce in the State of Arkansas four months later made him a party to the desertion to the extent at least that it showed that he consented to the appellant's desertion, and that the appellee was therefore not entitled to a divorce. But there is no merit in this contention for the reason that the appellant had already deserted the appellee and had filed two suits for divorce against him. See Hitchcock v. Hitchcock, 15 Appeal Cases, D. C., 81; Wagner v. Wagner, 39 Minn. 394, 40 N. W. 360.

A more serious question arises when we come to consider the effect of the Arkansas divorce decree upon the right of the appellant during the one year period allowed by the statute to put an end to the desertion and resume her marital relations with the appellee. Desertion is the only offense against the marital rights of the injured spouse mentioned in the divorce statute which must be continued for a definite period of time to ripen into a ground for divorce. And the general rule is that, ''If before the expiration of the statutory period of desertion a spouse, otherwise guilty of desertion, makes a sufficient offer to resume the marriage relationship, the continuity of the period of duration is interrupted and there can be no divorce.'' 27 C. J. S., p. 576, Divorce, par. 38 (3). Gaillard v. Gaillard, 23 Miss. 152; Fulton v. Ful-

ton, supra. In Bishop's treatise on Marriage, Divorce and Separation, Vol. 2, p. 567, par. 1483, the rule is stated as follows: "In matter of law, a deserted party must stand ready to receive the other back, if the offer to return is made in good faith, not otherwise, at any time before the statutory period has fully run. But when the desertion has ripened into a ground for divorce, the day of repentance is ended, and the one in whom is the right may refuse."

If in the case that we have here the appellant, at any time prior to the expiration of the statutory period, had made an offer in good faith to return to the matrimonial domicile and resume her marital relations with the appellee and the appellee had rejected such offer, the legal attitude of the parties with reference to the desertion feature of the case would have been completely changed, and the appellee would have become the offending party. But no such offer was made. If such offer had been made after the Arkansas decree was entered, the appellant would have had a right to attach to such offer a condition that before there should be an actual resumption of the marital relations between the parties the appellee should take such steps as might be necessary to have the Arkansas decree annulled. The appellee has not remarried, and if a reconciliation had been effected there is no reason to believe that the parties would have had any difficulty in having the decree annulled. (See Arkansas Statutes, 1947, Annotated, Section 34-1217). But the record clearly indicates that the marital difficulties between the parties were irreconcilable, and the appellant, as stated above, never offered to return. Under these circumstances her desertion ripened into a ground for divorce, and the appellee's right to sue for divorce on that ground matured as a vested right under the statute, unless as a matter of law that right was taken away by the Arkansas decree.

This Court has held that the Arkansas decree is invalid and will not be recognized by our Courts. There-

fore, the question now presented for our consideration is, ██ ██ What effect did the award of the Arkansas decree have upon the appellee's right to prosecute his suit for a divorce under our own statute in a court of competent jurisdiction in this State? We think that the award of the Arkansas decree had no effect upon the right of either party to a full adjudication upon their merits of the issues presented by the pleadings in this suit. A void decree of divorce obtained in this State would not be a bar to another action for divorce in which the court obtained proper jurisdiction of the parties. The appellee is claiming nothing here in reliance upon the Arkansas decree. And in our opinion neither the filing of the suit for divorce in Arkansas nor the award of the decree, which has been pronounced invalid by our own Court, constitutes sufficient cause for denying to the appellee the right to assert his claim for a divorce under our own statute.

In the case of Stevens v. Stevens, 273 N. Y. 157, 7 N. E. 2d 26, 109 A. L. R. 1016, the wife filed an action for a separation from her husband. The husband filed a counterclaim and asked for a divorce upon an allegation of adultery. On the trial the wife put in evidence a decree of divorce obtained by the husband a few months before in the State of Nevada. It was admitted that the Nevada court was without jurisdiction either of the cause or of the person of the wife and that its judgment had no force in the State of New York. The record showed that there had been no subsequent marriage of either party. In its opinion the Court said that the award of the Nevada decree to the husband should have no effect upon the right of either party to a full adjudication in the New York action upon the conceded fact of their existing marital status. And in its opinion the Court said: "This is not a case in which one spouse, after having secured a foreign divorce decree not binding in this State on the other, attempts thereafter to assert in our courts a private claim or demand arising out of their marriage.

\* \* \* The present case involves a controversy essentially different in character,'' from cases cited above in the Court's opinion. ''Here the court was invoked to pronounce judgment directly upon the marital status—a relationship which no stipulation or conduct of the parties could alter (Domestic Relations Law (Cons. Laws, ch. 14), par. 51. See Fearon v. Treanor, 272 N. Y. 268). The husband's counterclaim is interposed as matter of statutory right. (Civ. Prac. Act, par. 1168). Certainly a decree that is void cannot in itself be a reason why he should have less than his legal rights, and we need not inquire what the result would be in some further event that has not happened. (Cf. Fischer v. Fischer, 254 N. Y. 463; Lefferts v. Lefferts, 263 N. Y. 131; Chapman v. Chapman, 224 Mass. 427).''

The case that we have here is similar in many respects to the New York case. The appellee has not attempted to assert here a private claim or demand arising out of the marriage to the appellant; and, as stated by the New York court, a decree that has been declared to be invalid in this state should not preclude the appellee from asserting his legal right to a divorce under our own statute.

Finally, the appellant's attorneys contend that the decree of the lower court should be reversed for the reason that the findings of the chancellor are against the weight of the evidence. But that contention cannot be sustained. The testimony on many points at issue was conflicting. The chancellor had the parties themselves before him and heard them testify. He was in a position to observe their demeanor on the witness stand and was in a better position to evaluate their testimony than an appellate court which has before it only the printed record. The chancellor decided the issues of fact against the appellant; and after a careful study of the record we cannot say that the chancellor's findings are manifestly wrong or are not supported by the weight of the evidence.

For the reasons stated above, the decree of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.