515 So.2d 1208 (1987)
Timothy Peter O'NEILL
v.
Mildred Wilhelmina Morse O'NEILL.
No. 57150.
Supreme Court of Mississippi.
November 25, 1987.
*1209 W. Eugene Henry, Biloxi, for appellant.
Lee N. Perry, White & Morse, Gulfport, for appellee.
Before ROY NOBLE LEE, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
The case at bar involves an appeal from the Chancery Court of the First Judicial District of Harrison County, Mississippi wherein the court granted Mildred Wilhelmina Morse O'Neill a divorce from Timothy Peter O'Neill and handled related marital issues.
On appeal, Timothy Peter O'Neill assigns as error, inter alia, the following:
(1) The trial court erred by failing to sustain the appellant's motion to dismiss for lack of jurisdiction over the person of the appellant and in finding in its final judgment that the court had full jurisdiction of both parties.
(2) The trial court erred in failing to sustain the appellant's motion to dismiss for lack of jurisdiction of the subject matter and by finding in its final judgment that the appellee had been an actual bona fide resident citizen of the First Judicial District of Harrison County, Mississippi for more than six months next preceding the filing of her complaint and amended complaint.

I.
Mildred Wilhelmina Morse O'Neill (hereafter Millie) and Timothy Peter O'Neill (hereafter Tim) were married in Gulfport, Mississippi, on October 29, 1983. Millie, a lifelong resident of Gulfport, met Tim while he was assigned to Keesler Air Force Base. In November, 1983, Tim and Millie were reassigned to Germany where their only child, Meghan Nichole O'Neill, was born.
Prior to and following the birth of Meghan, the marriage experienced many problems. By July, 1984, Tim suggested to Millie that she return to Mississippi. Leaving Germany, Millie returned to Gulfport with Meghan on August 18, 1984. With the couple discussing separation and divorce, Tim returned to Mississippi in October to see Millie. While Tim was in the *1210 United States, Millie, around November 16, 1984, returned to Germany in order to ship her clothes and belongings to Gulfport.
Upon returning to the United States, Millie proceeded with divorce proceedings against Tim. On December 28, 1984, she filed a complaint seeking a divorce on the grounds of irreconcilable differences. The parties initiated negotiations on a property settlement. However, on April 1, 1985, Tim filed a "request" for a stay of proceedings for six months under the Soldiers' & Sailors' Civil Relief Act. The request was under oath and averred that O'Neill's military duty station in Germany and his duties there materially interferred with his participation in this lawsuit in the United States without a civilian attorney. This instrument specifically stated that the request "is not to be construed as an appearance".
After two more months, Millie filed an amended complaint on May 3, 1985, alleging additional grounds of cruel and inhuman treatment and habitual drunkenness. Notice of the amended complaint was given to Tim by publication requiring an answer thirty (30) days "after the 13th day of May, 1994[1] which is the date of the first publication... ."
On July 9, 1985, Millie filed a motion to dismiss the stay of proceedings filed by Tim under the Soldiers' & Sailors' Civil Relief Act. Respectively, a hearing on the motion to dismiss was held, but without any apparent notice to Tim, and on July 25 the court ruled that Tim had made an appearance through his request for the stay of the proceedings. The court found that Tim had sufficient notice of the complaint, but was in default for failure to file an answer and granted twenty (20) days to file responsive pleadings to the complaint or suffer default.
On August 12, 1985, Tim, by his now employed civilian attorney, filed a motion to dismiss the divorce bill, under a M.R.C.P. Rule 12(b) motion, for lack of jurisdiction over his person or the subject matter as the plaintiff had not been a resident of Mississippi for six months prior to filing the divorce bill. Both the original and amended sworn complaints for divorce allege that the date of separation of the parties was November 16, 1984.
In response to the subject matter jurisdictional question, Millie then filed an affidavit stating that she had always been a resident of the State of Mississippi and intended to maintain her Mississippi residency, even though she married Tim and subsequently moved with him to his duty assignment in Germany. She asserted that she returned from Germany in August, 1984 and resided there since that date.
Having before it these pleadings and argument of counsel, but apparently without any proof at that time, the chancellor entered an order on September 18, 1985 overruling Tim's motion to dismiss the suit for lack of jurisdiction of the subject matter and his person. On the same date the attorney for Tim filed an answer for him asserting again the jurisdictional defenses and a general denial of the divorce.
Thereafter, a trial date on the divorce was set by the court, and on November 12, 1985 Tim's counsel, by motion, requested a continuance until his tour of duty was over in Germany. On the appointed trial date of November 26, 1985, the court heard the proof on the divorce.
The trial transcript reflects that the court informed defendant's counsel at the conclusion of testimony that the preliminary opinion of the court was that the opportunity for the defendant to conduct his defense was not materially affected by reason of his military service. However, the court stated that it would "reserve a ruling in the case until such time as I have the affidavits which [counsel] mentioned have been sent to Captain O'Neill."
Notwithstanding that reservation, on the same date as the hearing, the record reflects that an absolute divorce was granted to Millie from Tim and ordering other related matters.
*1211 Tim, through counsel, moved the court on December 18, 1985, to reconsider its ruling, asserting again the jurisdictional deficiencies, together with other matters.

II.

DID THE TRIAL COURT ERR BY FAILING TO SUSTAIN THE APPELLANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE PERSON OF THE APPELLANT?
Tim, as the record reveals, was never a resident of the State of Mississippi. His only connection with the State was his assigned military duty at Keesler Air Force Base. Both in the original complaint and in the amended complaint, Millie stated that Tim was a resident citizen of Minnesota, and that their date of separation was November 16, 1984.
Tim, without the benefit of a Mississippi attorney, sought relief under the Soldiers' & Sailors' Relief Act. That Act at 50 U.S.C.A. Appendix § 521 provides in part:
At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as a plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person ..., be stayed as provided in this Act. ... (emphasis added).
This federal statute appertains in both the federal and state courts where military personnel assert it.
Initially, this Court notes that process by publication was issued under M.R.C.P. 4(c)(4)(C), and personal service was not attempted under M.R.C.P. 4(c)(5), which facts are the same as in Noble v. Noble, 502 So.2d 317 (Miss. 1987). However, as distinguished from Noble, supra, Tim O'Neill did receive notice by publication as evidenced by the filing of his request for a stay of proceedings. That fact distinguishes this case from Noble, supra. Assuming that the other jurisdictional requirements are met, the chancery court could have determined the divorce and custody issues and adjudged matters relating to property within the state. However, issues of alimony and child support could not be considered in the absence of personal service of process under Rule 4(c)(5), or the defendant's general appearance. Thus, the determination of whether the request for a stay of proceeding constituted an appearance submitting this defendant to in personam jurisdiction is critical.
The trial court held that Tim had entered an appearance by requesting relief under the Soldiers' & Sailors' Relief Act. The court at that time ruled as follows:
That the defendant, Timothy Peter O'Neill, having made an appearance by and through his motion for stay of proceedings filed on behalf of the defendant in this course under the Soldiers' & Sailors' Relief Act has made an appearance for all purposes and this Court has personal jurisdiction of the defendant.
In making the foregoing ruling, the trial court failed to note that Tim was not making a general appearance. Tim's request for relief stated, "This request is not to be construed as an appearance." 2A Moore, W. Taggart & J. Wicker, Moore's Federal Practice § 12.12, (2d ed. 1987), states, "Obtaining extensions of time and taking depositions before answering have been held not to constitute a waiver of the defenses of lack of jurisdiction of the person and improper venue."
To reinforce the rationale set out in Moore's Federal Practice, the case, Orange Theater Corp. v. Rayherstz Amusement Corp., 139 F.2d 871 (3 Cal., 1943) presents an issue similar to the case at bar. Prior to an answer being filed in Orange Theater Corp., two continuances were granted to the defendants. Judge Maris, writing for the Court, states:
It necessarily follows that Rule 12 has abolished for the federal court the age old distinction between general and special appearances. A defendant need no longer appear to attack the court's jurisdiction over him... . He may now enter *1212 openly in full confidence that he will not thereby be giving up any keys to the courthouse which he possessed before he came in. This, of course is not to say that such keys must not be used properly. If the defense of lack of jurisdiction of the person is not raised by motion before answer or in the answer itself it is by the express term of paragraph (h) of Civil Procedure Rule 12 to be treated as waived, not because of the defendant's voluntary appearance but because of his failure to assert the defense within the time prescribed by the rules. (Emphasis added)
Orange Theater Corp., 139 F.2d at 874.
With the decision of Orange Theater Corp. in mind, the question remains whether a request which specifically denies a general appearance is nevertheless the equivalent of submitting to the in personam jurisdiction of the court. In Bartner v. Debiasse, 20 F.R.D. 355 (1957), the Court ruled that a continuance request does not amount to a general appearance. The opinion in Bartner states, "A defendant so appearing does not waive his right to assert lack of jurisdiction over his person, in view of Rule 12, F.R.Civ.P. 28 U.S.C.A." Id. at 356. M.R.C.P. 12(b)(1) and (2).
In Kramer v. Kramer, 668 S.W.2d 457 (Tex. App. 8 Dist. 1984), the Texas Court, facing a similar factual situation to the case at bar, interprets the procedural characteristics of the Soldiers' & Sailors' Civil Relief Act. In Kramer, both parties, husband and wife, were members of the military. The wife, seeking a divorce, alleges in her complaint that she was a resident of Texas and her husband was a non-resident. Similarly, Millie, in the case at bar, claims to be a resident of Mississippi and Tim a resident of Minnesota. The husband in Kramer, using the Soldiers' & Sailors' Civil Relief Act, requests a delay in the proceedings. Respectively, Tim, in the case at bar, makes the same motion. The Court in Kramer states, "We do not regard the letter from appellant as an answer and appearance, but rather as an application to stay the proceedings under the Soldiers' & Sailors' Civil Relief Act of 1940." Id. at 458. Under distinguishing facts, this Court has held a letter denying the merits could constitute an appearance. Miller v. Miller, 512 So.2d 1286 (Miss. 1987).
This Court is asked to decide whether Tim's application for a continuance under the Soldiers' and Sailors' Civil Relief Act constitutes a general appearance. As pointed out earlier in this opinion, Tim's motion specifically states that he was not making a general appearance, and Tim submitted this motion prior to the filing of any other pleadings.
Additionally, Tim's counsel filed, first, a M.R.C.P. Rule 12(b)(1) and Rule 12(b)(2) motion to dismiss, and upon denial of that motion, secondly, he refiled the same grounds in the answer filed by his attorney. There was never any waiver by Tim of his defense of lack of in personam jurisdiction. M.R.C.P. 12(b). This Court, following the rational in Kramer, holds that Tim's motion for relief amounts to no more than an application to stay the proceedings and should not be construed as an appearance, nor should his subsequent pleading reasserting his defense be considered as waiver of that defense.

III.

DID THE TRIAL COURT ERR IN ITS FINDING THAT THE APPELLEE MET RESIDENCY REQUIREMENTS?
A "bona fide domicile" is a prerequisite to maintenance of a divorce action. It is a necessary element of a divorce action that must be established by plaintiff's proof. The residency requirements for the purpose of obtaining a divorce in Mississippi are set forth in Miss. Code Ann. § 93-5-5 (Supp. 1987) as follows:
(a) Where one (1) of the parties has been an actual bona fide resident within this state for six (6) months next preceding the commencement of the suit. If a member of the armed services of the United States is stationed in the state and residing within the state with his spouse, such person and his spouse shall be considered actual bona fide residents *1213 of the state for the purposes of this section, provided they were residing within the state at the time of the separation of the parties.
The residence of a married woman is that of her husband during the time that they live together as husband and wife. Weisinger v. McGehee, 160 Miss. 424, 134 So. 148 (1931). However, a married woman may establish a separate residence upon her separation from her husband with intent to abandon her old residence and to establish her independent residence. Carter v. Carter, 231 Miss. 662, 97 So.2d 529 (1957), Lynch v. Lynch, 210 Miss. 810, 50 So.2d 378 (1951). An intent to abandon the old residence is prerequisite to acquisition of a new residence. Lynch, supra.
In the instant case the fact is that the plaintiff here left her husband in Germany on August 19, 1984 with a round trip ticket to return to Germany. She filed an original and amended bill alleging November 16, 1984 as the date of separation of the parties. Nevertheless, Millie filed an affidavit and testified at trial that she had never intended to change her residence from the state of Mississippi when she married. However, her intention not to accept her husband's residence when she married him is contrary to the established law of this state. Weisinger, supra. Millie's residence became the residency of her husband, which residence on this record was either Minnesota or Texas. Therefore, Millie's residency claim based upon her intent never to change her Mississippi residency after her marriage must fail under Mississippi caselaw.
After Millie's separation from Tim, she may re-establish her Mississippi residency; however, a six months period must exist before commencement of this law suit on December 28, 1984. Miss. Code Ann. § 93-5-5 (Supp. 1987). Neither can Millie claim the filing date of her amended complaint as the date of the commencement of this action because of M.R.C.P. 15(c), which states:
(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
The complaint and amended complaint both allege November 16, 1984 as the date of separation of these parties which was the date she returned to Germany to pack her clothes. Undisputedly, Millie physically departed from Germany in August upon which date she relies in her affidavit as the separation date.
Notwithstanding, calculation of a six months period prior to either the August or the November date fails to reveal a six month period preceding the date of the commencement of this action on December 28, 1984.
The trial court's finding that August was the date of separation, based upon Millie's testimony as to her intent, was an insufficient time period. Additionally, the amended bill's filing date in May, 1985, cannot meet the residency period, since the amended bill relates back to the filing date of the original bill. M.R.C.P. 15(c). The chancellor's finding of six months residency of the plaintiff prior to the commencement of this suit was manifestly in error; therefore, the jurisdiction of the subject matter also fails.

IV.
This Court holds that the motion to dismiss this suit for failure of personal and subject matter jurisdiction should have been granted by the trial court. This Court reverses the judgment and dismisses the appeal.
REVERSED AND APPEAL DISMISSED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, J., concurs in part and dissents in part.
ROBERTSON, Justice, concurring in part, dissenting in part:
I concur in everything said by the majority except the sentence on page 1211 which reads:

*1214 However, issues of alimony and child support could not be considered in the absence of personal service of process under Rule 4(c)(5), or the defendant's general appearance.
My understanding continues inadequate when confronted with the notion that one may be subject to our adjudication of his rights in his marriage and his children but not his rights or duties respecting his pocketbook. It is no exaggeration to equate this legal proposition to an astronomer's declaration that half of the sun will rise in the west tomorrow and the other half in the east. In Noble v. Noble, 502 So.2d 317, 321-23 (Miss. 1987), I expressed my dissent from the Court's immaculate misconception that a non-resident can be a little bit pregnant. I remain a non-believer in the face of 1987's second such miracle.
NOTES
[1] This is obviously a mistake, since the publisher's affidavit shows the first publication to be May 13, 1985.