CARLTON, J.,
dissenting:
¶ 26. I respectfully dissent from the majority’s opinion. The record reflects that the evidence satisfied the requirements of Kim’s requested relief for a divorce based upon the fault ground of *431 Scott’s desertion of the marriage. A spouse’s wilful, continued, and obstinate desertion for the space of one year is a ground for divorce. Miss.Code Ann. § 93-5-1 (Rev.2013). Simply stated, “[t]he essence of desertion is one spouse’s abandonment of the marriage without the other’s consent.” Debbie Bell, Bell on Mississippi Family Law § 4.02 (2005).
¶ 27. To prove desertion, Kim had to show: (1) that Scott was absent for one year; (2) that Scott intended to abandon the marriage; and (3) that Kim did not consent to the separation. Id. As discussed herein, the record shows that each of these requirements was met. Moreover, the record fails to show evidence that Scott, the deserting spouse, offered any good-faith reconciliation. A deserted spouse’s unreasonable refusal of a good-faith offer may provide the spouse offering the reconciliation with grounds for divorce based on desertion. Id.[2] In this case, however, Scott made no offer of reconciliation, in good faith or otherwise. The evidence in the record satisfies the elements required to support Kim’s petition for divorce on the ground of desertion by evidence of Scott’s wilful, continued, and obstinate desertion of the marriage for the space of one year.
¶ 28. The majority affirms the chancellor’s finding that Kim’s conduct justified Scott’s desertion of the marriage. However, precedent reflects that the evidence the chancellor found to be causation of Scott’s departure from the marriage is insufficient to serve as a reasonable cause or legal justification for Scott’s desertion of the marriage. While the chancellor found fault with Kim, the chancellor failed to find that Kim’s conduct rose to the level of an independent contributory or proximate cause of the separation or an independent ground for divorce. Therefore, the record fails to show that Scott possessed a reasonable cause for leaving the marriage. See Bell, at § 4.02 (addressing situations where the conduct of one spouse is so extreme that the conduct drives away the other spouse).
¶ 29. Mississippi law holds that the deserted spouse need not be blameless. See Rodgers v. Rodgers, 349 So.2d 540, 541 (Miss.1977) (discussing the fault of both spouses in determining whether to uphold wife’s petition for separate maintenance). To be considered fault, “the spouse’s ‘misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation.’ ” See Saucier v. Saucier, 357 So.2d 1378, 1379 (La.Ct.App.1978) (citing Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707, 709 (1958)). The denial of sexual intercourse must be both unjustified and persistent to constitute marital fault rising to the level of an independent contributory or proximate cause. Stated otherwise, to provide grounds for divorce, the refusal to have sexual relations must be inexcusable and long-continued. Handshoe v. Handshoe, 560 So.2d 182, 184 n. 5 (Miss.1990) (citing Culver v. Culver, 383 So.2d 817, 818 (Miss.1980)).
¶ 30. As stated, the facts and the chancellor’s findings fail to support that Scott possessed any reasonable cause to abandon the marriage. Rather, the record reflects the following: (1) that Scott claimed a cessation in sexual relations at times during the marriage because of Kim’s work demands, work hours, and fatigue from work and for approximately thirty *432 days from November 2009 until he left in December 2009; (2) that he wanted to spend Christmas of 2009 with his mother rather than his wife; (3) that when he married Kim, she worked and had two children from a prior marriage; (4) that Scott and Kim had another child during the marriage; (5) that Kim continued to work throughout the marriage, and her work often required her to commute or stay overnight; (6) that Scott became stressed managing the duties of housework and helping with the kids; (7) that Scott possessed problems with sexual intimacy due to medical conditions or medications; and (8) that Scott deceived Kim by failing to disclose his intent to leave the marriage until after he left with their young son. For Kim’s conduct to rise to the level to justify Scott’s departure from the marriage, Kim’s conduct, as discussed, would need to rise to the level of an independent ground for divorce or an independent proximate cause of the separation.
¶ 31. Regarding Scott’s complaints as to sexual relations, cessation of sexual relations must be unjustified and persistent. Cessation due to work, work demands, or health is not unjustified. Evidence in the record fails to support Scott’s claim of cessation of sexual relations for any significant period. The record also contains evidence disputing Scott’s claim that Kim forced him to leave the marital bedroom. He claims to have been removed from the bedroom for approximately thirty days, from the end of November 2009 until he left on December 30, 2009. However, Kim’s thirteen-year-old daughter, Ann Marie, testified that she had no memory of Scott being removed from the marital bedroom and that her mom and Scott, whom she called Daddy, always slept together, except when the kids were sick. Kim also refuted any denial of sexual relations and claimed that she and Scott slept together the night before Scott left.
¶ 32. What is clear in the record is that Scott concealed not only his intent to leave but also his actual departure with the couple’s child. The record shows that after sleeping with Kim, the very next morning on December 30, 2009, Scott concealed from Kim his intent to leave. He asked her to leave her car at the house when she went to work so that he could change the oil. She claims that they kissed, and she went to work. Shortly thereafter, Scott’s mother and brother arrived, and they took Scott’s clothes, gun safe, an all-terrain vehicle, other personal property, and Scott and Kim’s son, Rex, and left for Loin, Mississippi. At 5 p.m. that day, Scott called Kim at her workplace and told her that he had left her and had taken Rex. On January 2, 2010, Kim went to Scott’s mother’s house to retrieve Rex, who had been taken without her knowledge, and after an altercation, Scott allowed Kim to leave with Rex. The record indicates that Scott called his attorney, who advised him to allow Kim to have custody of Rex and to not fight the protective order because Kim had been injured in the altercation with Scott. Kim received a protective order from justice court on January 4, 2010. The chancery court entered a temporary order on January 14, 2010.
¶ 33. At the trial on the divorce, however, the chancellor found Scott’s mother more credible than Kim regarding the altercation. The chancellor made this finding even though Kim received injuries, including a broken bone, in the altercation and even though Scott raised no objection or contest to the justice court’s protective order or the chancellor’s temporary order placing custody with Kim. The issues raised in Kim’s petition for a protective order had already been adjudicated and an *433 order issued by another court.[3] A victim of domestic violence may procure an order of protection even if the victim seeks to pursue the goal of reconciliation. Cole v. Cole, 147 Misc.2d 297, 301, 556 N.Y.S.2d 217, (N.Y.Fam.Ct.1990); 24 Am.Jur.2d Divorce and Separation § 266 (2008). The chancellor erred in reasoning that Kim’s action to obtain the protective order from justice court effectively prohibited Scott from returning, and therefore, desertion could not be found. The protective order did not prevent Scott from seeking marital counseling, making an offer of reconciliation to Kim, or stating any reasonable concerns.
¶ 34. The law requires neither that the deserted spouse give an immediate response nor that the offer to reconcile be made face to face.[4] In Thrasher v. Thrasher, 229 Miss. 536, 539, 91 So.2d 543, 544 (1956), the court found that where a wife sent her reconciliation offer through a local sheriff, her husband’s request for time to discuss the offer with his lawyer was not an unqualified refusal. The offer to reconcile must be unqualified and in good faith; the innocent spouse must be given sufficient time to consider a reply to the offer; and the deserter must respond to any reasonable concerns. See Bell, at § 4.02. Kim’s efforts in obtaining a protective order and then a temporary order constituted reasonable steps toward achieving a peaceful resolution of the situation created by Scott, whose deceitful departure from the marital residence included absconding with the couple’s son and injury to Kim when she attempted to retrieve their child. The purpose of domestic-abuse civil statutes is remedial and protective rather than criminal. 28 C.J.S. Domestic Abuse and Violence § 3 (2008). Domestic-abuse statutes act to prevent individual acts of abuse or recurrence of abuse by removing the perpetrator from the household for a period of time, providing the victim with a buffer zone of safety. Id.; see also Miss.Code Ann. § 97-3-7 (Supp.2013). The purpose of domestic-violence statutes is to preserve the safety of the family unit. 28 C.J.S. Domestic Abuse and Violence § 3 (2008). The chancellor erred in applying the law to these facts in finding that the protective order prevented reconciliation, since the law fails to support such a conclusion. Furthermore, the conclusion punished Kim for taking responsible and reasonable steps to prevent further violence against her person and to achieve a peaceful, not deceitful, resolution.
¶ 35. Kim’s petition for divorce similarly fails to provide any evidence of marital fault. The duty to reconcile does not extend beyond the one-year period. Bell, at § 4.02. Once the statutory period has run, the innocent spouse may obtain a divorce even though the deserter offers to reconcile. Id.; see also Lynch v. Lynch, 217 Miss. 69, 85, 63 So.2d 657, 663 (1953) (“[W]hen the desertion has ripened into a ground for divorce, the day of repentance is ended[.]”). The evidence in the record shows that Scott never offered to reconcile, in good faith or otherwise. Therefore, Kim did not reject any offer by Scott to reconcile, and as stated, the one-year peri *434 od expired.[5]
¶ 36. Additionally, Scott complains and asserts as fault: (1) the stress he feels from managing a household; (2) the parental responsibility of managing children; and (3) Kim’s work, work hours, commute to work, and fatigue from working. Precedent reflects, however, that absence from the marriage for legitimate reasons fails to constitute desertion. For example, a husband’s lengthy absence from Mississippi to find work in Florida was not desertion because he intended to return to his family. Walton v. Walton, 76 Miss. 662, 662, 25 So. 166, 168 (1899).[6] In the present case, Kim’s commute to work and her short absences caused by travel to and from work fail to constitute marital fault, much less just cause for Scott to desert the marriage.[7] The stress that Scott claims resulted from managing a household of three children and marriage to a working mom fails to evidence marital fault by Kim. Even though Scott may have felt stress from working, managing his parental and household responsibilities, and raising a family, the existence of these marital and parental responsibilities fails to constitute a basis of marital fault by Kim. Moreover, this stress could be resolved or managed by Scott without deserting the marriage by assigning chores or obtaining household help for this dual-working-parent household.
¶ 37. Abandonment is “the voluntary separation of one spouse from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent or wrongful conduct of the other spouse.” 27 Am.Jur.2d Proof of Facts 737 § 2 (1981). A wilful and malicious desertion is presumed when one spouse voluntarily separates from and abandons the other spouse without adequate legal reason. See Commonwealth ex rel. Udis v. Udis, 174 Pa.Super. 624, 101 A.2d 144, 145 (1953); 27 Am.Jur.2d Proof of Facts 737 § 2 (1981). Moreover, the law fails to require that the abandoned spouse, Kim in this case, be blameless. See 27 Am.Jur.2d Proof of Facts 737 § 3 (1981); see also Jeffrey v. Jeffrey, 172 A.D.2d 719, 569 N.Y.S.2d 107, 108 (N.Y.App.Div.1991).
¶ 38. A determination of whether Kim’s conduct rose to the necessary level should be based upon factual findings showing that Kim’s fault factually supported an independent ground for divorce or an independent contributory or proximate cause of the separation. See Goodwyn v. Goodwyn, 222 Va. 53, 278 S.E.2d 813, 814 (1981) (holding that temporary cessation of sexual relations for less than two months prior to wife’s hospitalization, where wife worked and financially contributed to the family, was insufficient to show wilful desertion).
¶ 39. The evidence in the record satisfied the requirements for Kim to prove the ground of desertion, and no evidence shows that Kim rejected any offer of reconciliation, in good faith or otherwise. *435 The evidence in the record showing fault by Kim during the marriage fails to rise to a level to provide Scott with a reasonable cause or legal justification to desert the marriage. Accordingly, I dissent from the majority’s opinion and would remand this case to the chancellor to grant Kim’s petition for divorce on the ground of desertion by Scott.

. See also Thrasher v. Thrasher, 229 Miss. 536, 539, 91 So.2d 543, 544 (1956) (finding that husband filed for divorce based upon desertion, that wife made no good-faith offer of reconciliation, and that, good faith or otherwise, husband did not reject an offer of reconciliation).

. See Riley v. Wiggins, 908 So.2d 893, 899 (¶ 15) (Miss.Ct.App.2005) (discussing the final nature of a consent decree, which "has the force of res judicata”); see also 24 Am.Jur.2d Divorce and Separation § 266 (2008) (party requesting protective order bears burden of proof of showing actual or imminent domestic violence; protection order is warranted where potential for future abuse exists based upon past behavior).

. See generally Bell, at § 4.02 (discussing offers to reconcile).

. At oral argument, counsel for Scott argued that Kim should agree to an irreconcilable-differences divorce, but in Mississippi Kim cannot be forced into such an agreement. See Miss.Code Ann. § 93-5-2 (Supp.2013).

. But cf. Wilson v. Wilson, 198 Miss. 334, 341-42, 22 So.2d 161, 163 (1945) (discussing that, when a wife abandons her husband without legal justification, she is not entitled to alimony).

.But cf. Griffin v. Griffin, 207 Miss. 500, 504, 42 So.2d 720, 722 (1949) (reflecting precedent that a spouse is justified in leaving a husband whose complete refusal to work left the family without adequate food and shelter and dependent on friends).