IN THE SUPREME COURT OF MISSISSIPPI
NO. 95-CA-00774-SCT

*DONALD HOWARD HAMM*

*v.*

*DIANE HAMM HALL*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/95 |
| TRIAL JUDGE: | HON. JOHN C. ROSS JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHARLES MATTHEW HOLLEB |
| ATTORNEY FOR APPELLEE: | JAQUELINE ESTES MASK |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 5/8/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/29/97 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. The present case involves a personal judgment for child support entered against a divorcing father residing outside of this State. A judgment was entered against the father in spite of the fact that notice by publication was provided and in spite of the fact that the father filed no answer and made no general appearance in response to the divorce, custody, and support petition. Under clear precedent set by this Court and by the United States Supreme Court, this Court must reverse and declare the original order of child support to be void. This Court remands, however, for a determination of the father's liability for child support payments from and after the point at which the trial court did gain personal jurisdiction over him through his filing of an answer to a subsequent motion filed by the mother.

## II. STATEMENT OF THE FACTS AND CASE

¶2. On July 3, 1984, the Chancery Court of Lee County issued a final decree granting Diane Hamm a divorce from Donald Hamm. In said decree, the Court affirmatively found that it had obtained

personal jurisdiction over Donald in spite of the fact that he was served with notice by publication. Publication of the notice was made in the Northeast Mississippi Daily Journal in Tupelo for three consecutive weeks on March 23, March 30, and April 6, 1984. A copy of the summons was mailed by first class mail to Donald's supposed home address in Des Moines, Iowa, but Donald asserts that the only notice which he received of the notice was through personal conversations with Diane.

¶3. Donald filed no answer to the divorce petition, nor did he make an appearance at the divorce proceeding. In addition to granting the divorce, the Chancellor ordered Donald to pay Diane sixty dollars a week in child support payments, which amount was to automatically increase to seventy-five dollars per month one year from the issuance of the decree. Donald almost immediately began paying fifty-five dollars per week in child support payments, but said payments were made somewhat sporadically and a deficiency in the ordered payments accumulated over the course of the next ten years.

¶4. On June 9, 1994, Diane filed a complaint for contempt of court and for modification of the earlier decree, and Donald was provided with personal notice of this complaint. In said complaint, Diane sought the payment of $18,495.00 in past due child support, and Donald responded with a cross-complaint filed on July 15, 1994, seeking modification of the earlier decree, including specific provisions granting him a right to visitation with the children. Donald's answer did not assert any affirmative defenses, and it was not until September 13, 1994, that Donald filed a motion to strike in which he argued for the first time that the chancery court lacked personal jurisdiction over him in the original action and that the child support order was thus void.

¶5. The Chancellor denied the motion to strike on October 10, 1994, but he reconsidered and vacated the denial of this ruling on December 12, 1994. Donald's original motion to strike was considered at a hearing on July 15, 1995, but the Chancellor once again denied this motion, ruling that Donald had waived any due process violations which he might have suffered through the lack of personal service granted to him. Donald filed an appeal from this ruling, although he did not file an interlocutory appeal, which, Diane contends, was his only available appellate remedy.

### III. LAW

**A. Do the facts relating to service of process upon defendant Donald Hamm justify the finding by the trial court on June 20, 1995 that "there is personal jurisdiction over the defendant" irrespective of the fact that on December 12, 1994 the trial court had ruled opposite thereto?**

**B. Do the actual facts of service of process upon defendant Donald Hamm, rather, justify the reversal of the trial court finding of personal jurisdiction and the consequent finding by this Mississippi Supreme Court that those facts constitute *In Rem Jurisdiction*?**

**C. Did the child support order requiring defendant Donald Hamm to pay to "Diane F. Hamm the sum of $60.00 per week for the care and maintenance of the minor children and shall automatically increase to $75.00 per week in one year "actually impose that economic payment requirement upon defendant Donald Hamm?"**

¶6. Donald argues that the original order for child support entered against him was an invalid and void judgment, given that the chancery court did not have *in personam* jurisdiction over him. Donald has substantial support for his argument in legal authority.

¶7. 24 AmJur2d "Divorce and Separation" § 552 provides that:

> It is well settled, in accord with general rules applicable in other cases, that a decree for alimony and costs against a nonresident defendant cannot be based on constructive service except as against property found within the jurisdiction of the court, proceeded against in the divorce proceeding, and described in the complaint or petition. In other words, constructive service, whether made by publication or by actual service of process on the defendant outside the state, is insufficient to give jurisdiction on which to render a judgment for alimony against a nonresident which would be personally binding. The acceptance of the decree by a defendant over whom no jurisdiction was obtained has been held not to estop the defendant from disputing the validity of a subsequent ex parte proceeding in the divorce suit by which the judgment was opened and a decree for alimony entered.

¶8. This Court's decision in *Noble v. Noble*, 502 So.2d 317 (Miss. 1987) is directly on point in the present case. In *Noble*, Dorothy Noble filed for divorce in this state, serving notice upon her husband by publication and by mailing notice of said publication to his residence in South Carolina via first class mail pursuant to M.R.C.P. 4(c)(4). *Noble*, 502 So.2d at 319. Notice of the original divorce petition in the present case was similarly provided to Donald in precisely the manner called for under M.R.C.P. 4(c)(4). Based on this notice, the Chancellor in *Noble* declined to impose a monetary judgment upon Mr. Noble, ruling that he lacked personal jurisdiction over him. This Court affirmed, holding that the notification under M.R.C.P. 4(c)(4)(C):

> (Did) not confer personal jurisdiction over the defendant without answer or general appearance by the defendant. This publication method under M.R.C.P. 4(c)(4)(C) does not authorize rendition of a personal judgment against the defendant without his appearance. (*citing Campbell v. Campbell*, 357 So.2d 129 (Miss. 1978). Had the plaintiff followed the procedure of Rule 4(c)(5) and secured service of process by certified mail, return receipt requested, restricted delivery, personal jurisdiction over the defendant to render a personal judgment would have been accomplished under the facts of this case.

*Noble*, 502 So.2d at 320.

¶9. Thus, this Court has held that a method of service virtually identical to the service provided in the present case is insufficient to grant the courts of this State personal jurisdiction over a defendant absent an answer or general appearance on the part of the defendant. This Court based its holding in *Noble* in large part upon the United States Supreme Court case of *Kulko v. California Superior Court*, 436 U.S. 84 (1978), wherein the Supreme Court held that:

> It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. ... The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought, ... and a sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the

forum. (citations omitted).

*Kulko*, 436 U.S. at 91.

¶10. Based on the standards set forth by the United States Supreme Court in *Kulko*, this Court held in *Noble* that notice by publication pursuant to M.R.C.P. 4(c)(4) was not sufficient to meet the "adequacy of notice test" in for the purposes of the "rendition of a money judgment." *Id.* at 320. In the present case, Diane similarly served notice by publication upon her husband through the very same method set forth in M.R.C.P. 4(c)(4). Under these facts, the chancery court had no jurisdiction to enter a money judgment against Mr. Hamm, where the record indicates that he made neither an answer nor a general appearance.

¶11. The record indicates that the Chancellor based his ruling that Hamm had waived any due process violation on a misreading of this Court's decision in *Miller v. Miller*, 512 So.2d 1286 (Miss. 1987). *Miller* is clearly distinguishable from the present case based on the fact that this Court in *Miller* held that the defendant had filed an answer to the summons. This Court in *Miller* so held based on the fact that the defendant had mailed a letter to the court which was expressly designated as an "answer" to the summons and which set forth the defendant's defenses to the charges in said summons. This Court expressly stated in *Miller* that "(w)e hold that handwritten letter to be an entry of appearance for purposes of *in personam* jurisdiction." *Miller*, 512 So.2d at 1288. As such, the facts in *Miller* did not involve a violation of the husband's due process rights to personal service of process in an action in which an *in personam* judgment is sought, given that this Court expressly held that an answer was filed in said case.

¶12. This Court in *Miller* also held that the defendant had waived any due process rights with regard to the judgment in question, given that he had made the payments in question. The Chancellor wrote in his ruling that:

> The Court is of the opinion that this matter is controlled by (*Miller*). There the Court stated: `Unfortunately, he paid the alimony and child support for three years before complaining about any due process violation, and we hold that decree is now final and any due process right has been waived.' This Court is of the opinion and so finds that the judgment of child support against Donald Hamm in the original decree of divorce was valid, and that Donald Hamm, by his acquiescence thereto has waived any right to challenge the decree.

The Chancellor overlooked the fact that this Court in *Miller* based our holding that a due process violation had occurred not on a lack of notification as in the present case, but rather on the plaintiff's failure to plead for alimony or child support in the original complaint. The original complaint in *Miller* had not sought alimony or child support, but the final decree had nevertheless required the payment both alimony and child support. Citing *Diamond v. Diamond*, 403 So.2d 129 (Miss. 1981), this Court in *Miller* noted that an award of child support and alimony violated the due process rights of the husband where no request for such remedies was made in the petition. *Miller*, 512 So.2d at 1288. The due process violation in *Miller* thus arose from a failure on the part of the plaintiff to request the monetary relief in the complaint rather than failure to grant adequate notice.

¶13. The issue then arises as to whether a due process violation based upon a failure to grant the defendant notice sufficient to give rise to *in personam* jurisdiction may similarly be waived by the

defendant's making monetary payments. This Court concludes that this question should be answered in the negative, given that monetary judgments rendered in the absence of personal jurisdiction have been characterized by this Court as being void. This Court emphasized in *Miller* that the due process violations arising from the failure to request monetary awards in the original petition did not render the judgment void, and this Court accordingly held that the judgment became final after the payments were made for three years. *Id.* at 1288.

¶14. In *Johnson v. Johnson*, 191 So.2d 840, 842 (Miss. 1966), this Court was faced with a situation in which, as in the present case, an order of child support was entered against a father residing out of state who was served only with notice by publication. This Court held that:

> The decree of the chancery court allowed support money for the minor child and use of a 1964 Mercury Monterey automobile; this was error. The defendant was not personally served with process. He was summoned by publication. The chancery court did not have jurisdiction of his person, although he filed motion to test the jurisdiction of the court. In **Bunkley and Morse's Amis Divorce and Separation in Mississippi,** § 6.02 at page 181, it is said that a "decree for the payment of money as alimony is essentially one in personam, and therefore *totally void* in the absence of actual jurisdiction over the person or the property of the one against whom it is awarded." (citations omitted).

*Johnson v. Johnson*, 191 So.2d at 842. (emphasis added)

¶15. Thus, this Court has held that a monetary judgment entered with only notice of publication is "totally void," and such a characterization leaves little if any room for a finding that the judgment was revived by the making of monetary payments. See also: *Campbell v. Campbell*, 357 So.2d 129, 131 (Miss. 1978); *Logan v. Rankin*, 94 So.2d 330, 335 (Miss. 1957).

¶16. The Mississippi Rules of Civil Procedure provide for limited circumstances in which a defense of lack of personal jurisdiction may be waived. M.R.C.P. 12(h) provides that a defense of lack of personal jurisdiction may be waived, but said provision only infers such a waiver through the filing of a motion in which the defense of personal jurisdiction is not raised. In *O'Neill v. O'Neill*, 515 So.2d 1208, 1212 (Miss. 1987), this Court held that a husband who, like Donald, had received only notice of publication of a divorce was not subject to the personal jurisdiction of the court and did not waive his defense of lack of personal jurisdiction by filing a motion in which he expressly reserved his defense of lack of personal jurisdiction. In the present case, Donald does not contest that the chancery court gained personal jurisdiction over him when he filed an answer to his ex-wife's motion for contempt and entered an appearance before said court, but this Court concludes that the chancery court had no personal jurisdiction over him prior to this time.

¶17. There are also public policy considerations against inferring a waiver in the present circumstances. This Court should encourage the financial supporting of minor dependents, even if the judgment requiring a divorcing parent to do so is properly considered to be void. By inferring a waiver from Donald's payments to his children, this Court would in effect be penalizing Donald for partially supporting his children instead of declining to support them altogether. In addition, the making of financial support payments by a father to his children does not necessarily indicate an acknowledgment of a child support judgment by said father, especially where, as here, the payments were in an amount different from the amounts required under the judgment. Unlike in many other

situations not involving a familial support situation, a father would (hopefully) feel the moral obligation to make support payments to his children, even absent a valid judgment requiring him to do so.

¶18. Disregarding the public policy considerations, some of which admittedly favor Diane's position, the fact remains that a judgment which has been characterized by this Court as being "totally void" can not properly be held to have been waived by the making of payments, which may or may not have been made even absent such a judgment. In light of the considerable adverse authority against her, Diane turns to the equitable doctrine of laches and unjust enrichment, arguing that Donald has slept on his rights and unjustly enriched himself. Diane urges that the chancery court or this Court on appeal should accordingly do equity by ruling against Donald. This argument is without merit. The chancery court may only exercise its authority to act equitably with regard to parties and matters over which it has properly acquired jurisdiction.

¶19. Diane cites no authority applying the doctrine of laches or unjust enrichment to the present jurisdictional context. In addition, it is arguably Diane who has slept on her rights in the present case, given that she waited over ten years to file her motion for contempt in spite of the fact that Donald was consistently underpaying the amounts purportedly owed under the judgment. Her ex-husband had returned to Mississippi and was subject to personal jurisdiction here.

¶20. This Court agrees with Diane that some of the equities of the present case favor her and her children, but the case law is clear that a personal judgment may not be entered based on notice of publication absent an answer or general appearance. Such being the case, the equitable notions advanced by Diane are of no help in light of the fact that the chancery court lacked jurisdiction to enter the child support order. This Court has sympathy with Diane's position, but nevertheless must order that the ruling of the Chancellor be reversed and that the 1984 order of child support be declared void. However, this Court remands the present case for a determination of Donald's liability for child support payments from and after the time at which Donald filed an answer to Diane's motion for contempt, thus granting the chancery court personal jurisdiction over him.

### Was the 1995 order a final judgment ?

¶21. Diane argues that the order from which the present appeal was taken is not a final order at all and that an interlocutory appeal was thus Donald's only available appellate remedy. Miss. Code Ann. § 11-51-3 provides that an appeal may be taken from "any final decree of the chancery court," and Diane notes that the 1995 ruling was merely a denial of a motion to strike, which, she argues, does not constitute a final decree from which an appeal may be taken.

¶22. It is clear, however, that the failure to file an interlocutory appeal by Hamm does not serve to transform the void 1984 order for child support into a valid one. In addition, Donald's arguments before this Court are in the nature of an appeal from the 1984 judgment, and a party may point out at any time that a given judgment is void or this Court may so rule on its own motion. It appears that Donald's primary error was in the wording of his notice of appeal in that said notice did not expressly refer to the 1984 ruling. The hearings from which the present appeal is taken are merely continuations of that prior void order, however, and this Court concludes that Donald may properly argue that the 1984 order is void.

¶23. It would have been preferable for Donald to have filed an interlocutory appeal, but where the very proceedings involved are based on a void judgment, this Court concludes that a remand for the continuation of those proceedings would be contrary to law and considerations of judicial economy. Such a decision by this Court would force Donald to await the Chancellor's ruling and then file yet another appeal in which the identical, yet valid, arguments regarding the void 1984 decree would be made.

¶24. As noted earlier, however, this Court does remand for a hearing to determine Donald's liability for child support payments from and after the period in which Donald answered the current petition. The monetary obligations which were purportedly placed on Donald prior to the chancery court's obtaining *in personam* jurisdiction over him are properly considered to be void, but said fact does not, or course, preclude the chancery court from entering a new order for child support now that Donald has generally appeared before said court.

**IV. Did the trial court properly exercise a valid authority when it ordered "that the defendant shall not have visitation rights with the minor children?"**

¶25. Donald argues that the Chancellor should not have denied him all visitation rights with his children in the original 1984 order. Donald does not assert that the Chancellor was without jurisdiction to make this ruling, but he argues rather that said ruling was inconsistent with legal precedent holding that a parent should not be denied all visitation rights with his children absent a showing that such visitation would be harmful to the children. This issue is an appropriate one for consideration on remand rather than for consideration by this Court in the context of the present appeal. Donald merely sets forth the law in this area and the record is insufficient for this Court to reach a decision in this regard under the particular facts of the present case.

¶26. In particular, evidence regarding the nature of the relationship between Donald and his children and regarding his fitness or lack thereof as a father is not before this Court so that a decision may be reached in this regard. The Chancellor on remand should consider arguments relating to the proper amount of child support now that personal jurisdiction over Donald has been obtained, and at the same hearing Donald may set forth his arguments why the original order denying him visitation rights should be modified.

**¶27. REVERSED AND REMANDED.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**