## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-CA-01494-SCT

*DEPARTMENT OF HUMAN SERVICES, STATE OF MISSISSIPPI*

*v.*

*EDWARD E. SHELNUT*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/02/1999 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  GREGORY J. WEBER |
| | JOHN G. SIMS, III |
| ATTORNEY FOR APPELLEE: | REEVES JONES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 12/14/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/4/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. The Mississippi Department of Human Services (DHS) attempted to register and enforce a child support order entered by a Canadian court against Edward E. Shelnut in the Chancery Court of the First Judicial District of Hinds County pursuant to the Uniform Interstate Family Support Act (UIFSA), Miss. Code Ann. § § 93-25-1 *et seq.* (Supp. 1999). The chancery court refused to enforce the judgment for child support because it found that the Canadian court did not have personal jurisdiction over Shelnut. DHS has appealed to this Court. We hold that the chancellor erred and accordingly reverse and remand.

### STATEMENT OF FACTS

¶2. Edward E. Shelnut and Gaye-Lynn Kern married in 1981 in the Canadian province of Saskatchewan. Immediately after their marriage, the couple resided in the United States -- first in Georgia, then in Hinds County, Mississippi. Their daughter, Margaret Anne Shelnut, was born in 1986. In 1989, Shelnut and Kern separated, and Kern returned to her native Canada with Margaret Anne.

¶3. On April 27, 1989, Shelnut filed a complaint for child custody and support in the Hinds County Chancery Court. Shelnut filed a separate complaint for divorce on May 2, 1990. Seven days later, Kern filed an action for divorce in the Court of Queen's Bench, Judicial Centre of Saskatoon, Canada. Kern successfully obtained service of process over Shelnut, but Shelnut was unable to effectuate service of process over Kern.

¶4. Shelnut filed an affidavit and pleading contesting personal jurisdiction in the Canadian court. He never made a physical appearance in that court. The Canadian court granted Kern's request for a divorce on June 28, 1990, and also awarded Kern with child custody and child support. No appeal was taken by Shelnut.

¶5. Likewise, Kern contested the jurisdiction of the Hinds County Chancery Court by filing a motion to dismiss regarding Shelnut's complaint for child custody and support. On May 2, 1990, Chancellor Denise Sweet Owens denied Kern's motion to dismiss, finding that the court had concurrent jurisdiction with the Canadian court over the parties and subject matter. On September 18, 1990, Shelnut's actions divorce and for child custody and support were consolidated upon joint motion of the parties. Chancellor Stuart Robinson dismissed the action, finding that the Canadian court, having jurisdiction over the parties and marital relationship, had entered a valid divorce. Shelnut did not appeal the chancery court's judgment. He has never paid child support as ordered by the Canadian court.

¶6. On January 25, 1999, DHS, in an attempt to collect child support and arrearages in the amount of $30, 225, filed notice of registration of the Canadian judgment in the Hinds County Chancery Court. Shelnut contested enforcement of the foreign judgment. Chancellor Robinson held that the Canadian judgment for child support was not enforceable in Mississippi and dismissed the action, finding that the Canadian court lacked personal jurisdiction over Shelnut necessary to support a judgment of child support against him.

¶7. DHS timely filed a notice of appeal from the judgment of the chancery court. DHS raises the following issues:

> **I. THE DOCTRINE OF RES JUDICATA PRECLUDES SHELNUT FROM ATTACKING THE JURISDICTION OF THE CANADIAN COURT.**
>
> **II. THE CHANCELLOR ABUSED HIS DISCRETION BY DENYING DHS'S REQUEST THAT KERN BE PERMITTED TO TESTIFY BY TELEPHONE.**

Shelnut, who filed no notice of cross-appeal in this action, raises the following issue:

> **III. THE JUDGMENT OF THE CANADIAN COURT DOES NOT QUALIFY FOR ENFORCEMENT UNDER THE UIFSA.**

### DISCUSSION OF LAW

> **I. THE DOCTRINE OF RES JUDICATA PRECLUDES SHELNUT FROM ATTACKING THE JURISDICTION OF THE CANADIAN COURT.**

¶8. Generally, the enforcement of judgment entered in a foreign nation is governed by state law and the principle of comity. *Laskosky v. Laskosky*, 504 So. 2d. 726, 729 (Miss. 1987). The application of the principle of comity is a matter of discretion with the trial judge. *Id.* (citing *Kountouris v. Varvaris*, 476 So. 2d 599, 607 (Miss. 1985); *Cox v. Cox*, 234 Miss. 885, 892, 108 So. 2d 422 (1959)). However, in the area at issue in this case -- child support -- our Legislature has seen fit to adopt statutory law controlling the recognition of foreign judgments.

¶9. The UIFSA, as enacted in Mississippi, provides a procedure whereby child support orders from foreign states and countries may be enforced in this Mississippi. Miss. Code Ann. §§ 93-25-1 *et seq.* (Supp.

1999). Jurisdictions outside the United States fall within the purview of the UIFSA. By definition, a "state" includes foreign jurisdictions which have enacted laws or established procedures for issuing and enforcing support orders similar to the UIFSA. Miss. Code Ann. § 93-25-3(s)(ii) (Supp. 1999). The proper procedure to be followed by a foreign jurisdiction seeking enforcement of a child support order is to send a request for registration with the order to the appropriate tribunal in Mississippi. Miss. Code Ann. § 93-25-83 (Supp. 1999). A registered order "is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state." Miss. Code Ann. § 93-25-85(2) (Supp. 1999). Canada is a participant in this scheme of enforcement. *See* Reciprocal Enforcement of Maintenance Orders Act, 1996.

¶10. Whether we are examining enforcement of the judgment under statutory law or principles of comity, the ability of a court to give effect to a foreign judgment necessarily depends upon the judgment being valid in the first place. Because the duty to pay child support is a personal obligation, a valid judgment imposing child support in favor of a plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *Hamm v. Hall*, 693 So. 2d 906, 909 (Miss. 1997) (citing *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). Thus, the question of whether the Canadian court had personal jurisdiction over Shelnut is crucial to the chancery court's ability to enforce the judgment. Shelnut successfully argued before the chancery court that because the Canadian court lacked jurisdiction over his person, the judgment for child support is void and unenforceable under the UIFSA.

¶11. The chancellor's determination to forego application of the doctrine of res judicata is a legal rather than a factual determination. For questions of law de novo, our standard of review is de novo. *Saliba v. Saliba*, 753 So. 2d 1095, 1098 (Miss. 2000) (citing *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990)). DHS contends that the chancellor erred in refusing to apply the principles of res judicata to the issue of whether the Canadian court had personal jurisdiction over Shelnut. DHS points to two prior adjudications of this issue which, DHS contends, preclude Shelnut's collateral attack on the validity of the foreign judgment.

### A. The Canadian Judgment

¶12. Shelnut filed an affidavit and responsive pleading in the Canadian court in which he raised, among other defenses, the issue of personal jurisdiction. DHS first argues that the Canadian court's decision on jurisdiction is binding and bars Shelnut's collateral attack.

¶13. The principles of res judicata apply to questions of jurisdiction as well as to other issues whether the questions relate to jurisdiction of the subject matter or jurisdiction of the parties. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Where the jurisdiction of the court is challenged, and the question is contested and decided, a judgment of the court, unless reversed or set aside, that jurisdiction duly attached is conclusive on the parties in subsequent litigation. *State ex rel. Patten v. Gaither*, 179 Miss. 64, 171 So. 768 (1937).

¶14. When a person receives a complaint and summons from a court in another jurisdiction, whether the jurisdiction be another state, another federal court, or another country, and believes he is not subject to that court's jurisdiction, he has several alternatives available to him.[1] First, he may ignore the complaint and summons, and, then, if a default judgment is issued against him, he may challenge that judgment on jurisdictional grounds in a collateral proceeding when the plaintiff seeks to enforce the judgment. *Insurance Corp. of Ireland*, 456 U.S. at 706, 102 S.Ct. at 2106 (citing *Baldwin v. Iowa State Traveling Men's*

*Ass'n*, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931)). Second, he may voluntarily waive any lack of personal jurisdiction and submit to the distant court's jurisdiction. And third, he may submit to the jurisdiction of the court for the limited purpose of challenging jurisdiction. *Id.* (citing *American Sur. Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 234 (1932)). The Supreme Court has explained that by taking this third route, as Shelnut has done here, "the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings." *Id.*

¶15. DHS relies upon the opinion of the Supreme Court of Alaska in *Wall v. Stinson*, 983 P.2d 736 (Alaska 1999). In that case, an Oregon court entered a child support order. The husband, a resident of Alaska, had participated through counsel in the Oregon proceedings and had unsuccessfully raised the issues of personal and subject matter jurisdiction. The husband began to prosecute appeal in Oregon, but later abandoned it. When the wife attempted to enforce the Oregon order in Alaska, the husband attempted to collaterally attack the Oregon order, maintaining that it was not entitled to full faith and credit because the Oregon court lacked personal jurisdiction over him. The Alaska Supreme Court rejected this argument, stating:

> Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.

*Id.* at 741 (quoting *Baldwin*, 283 U.S. at 525-26). The court went on to note that although the discussion in *Baldwin* involved federal res judicata law, the Supreme Court later declared that this rule also applies to foreign judgments being enforced under full faith and credit. *Id.* (citing *Sherrer v. Sherrer*, 334 U.S. 343, 350, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948); Restatement (Second) of Conflict of Laws § 96 cmt. b (1971) (reasoning that where the defendant chooses to litigate personal jurisdiction in the forum, rather than default, he gives the court jurisdiction to decide the issue)). The court explained that because the husband chose to litigate the issue in the Oregon court, the judgment was entitled to full faith and credit, even if the judgment was based on legal error. *Id.* at 741. The court explained that the remedy for legal error is appeal, not collateral attack. *Id.*

¶16. Though the rule in *Wall* and *Sherrer* was applied to judgments of foreign states being enforced under full faith and credit, the rule is equally applicable to the judgments of foreign nations being enforced in this state under the principle of comity, as discussed by this Court in *Laskosky*, 504 So. 2d at 729-30. In *Laskosky*, this Court examined the jurisdiction of a Canadian court to render a child custody decree under the Uniform Child Custody Jurisdictional Act. Miss. Code Ann. § 93-23-5 (Supp. 1999). The wife in *Laskosky* made jurisdictional arguments, asking this Court to ignore the Canadian decree. This Court held that the wife had submitted to the jurisdiction of the Canadian court and that jurisdiction, once acquired, could not be later defeated. *Id.* at 730.

¶17. Shelnut argues that by filing a responsive pleading which contained the jurisdictional defense, he somehow preserved the issue of personal jurisdiction for collateral attack. For this proposition he cites *O'Neill v. O'Neill*, 515 So. 2d 1208 (Miss. 1987). The chancellor also relied upon *O'Neill* in finding that Shelnut had preserved his objection to the jurisdiction of the Canadian court. *O'Neill* involved a judgment

of divorce entered against a nonresident husband by the Harrison County Chancery Court. The husband appealed the chancellor's denial of his motion to dismiss for lack of personal jurisdiction. This Court reversed the chancery court's decision that the husband waived his jurisdictional objections by making a general appearance. The Court noted that the husband's motion to dismiss based on lack of personal jurisdiction prevented waiver of the husband's defense of lack of personal jurisdiction. *Id.* at 1212. The Court concluded that the chancery court erred in denying the motion to dismiss.

¶18. *O'Neill* is inapplicable to the facts at hand. In *O'Neill*, by making a special appearance to raise the issue of personal jurisdiction, the husband preserved the jurisdictional issue for purposes of direct appeal. He did not preserve it for collateral attack. *See also* **Lambert v. Lawson**, 538 So. 2d 767 (Miss. 1989). The same is true of Shelnut. Shelnut made no attempt to appeal the judgment of the Canadian court, and he should not now be permitted to collaterally attack it.

¶19. Shelnut also argues that because the judgment of the Canadian court contains no express finding on the issue of jurisdiction, the question of jurisdiction was never decided and that he should therefore be allowed to collaterally attack the question of jurisdiction. The Shelnut argument is misplaced. This Court has held that a federal court, by merely assuming jurisdiction and adjudicating a case, necessarily determines it has jurisdiction thereof, and the correctness of such a determination cannot be collaterally attacked in a subsequent suit in state court. *Alliance Trust Co. v. Armstrong*, 185 Miss. 148, 186 So. 633 (1939). In *Alliance Trust*, this Court explained that upon allegations that a forum court is without jurisdiction, the court is charged with the duty of determining its jurisdiction. *Id.* at 634. The Court stated, "This it necessarily did by assuming jurisdiction and adjudicating the case. Whether it decided that question correctly or not would be of interest on an appeal from its judgment, but cannot be inquired into here." *Id.* at 635 (citing *Baldwin*, 283 U.S. 522; *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)).

¶20. Though the case at hand involves a foreign, not federal, court, the same rationale should be applied. A judgment is presumed to have resolved all issues in favor of the validity of the judgment. *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990). The question of jurisdiction was within the scope of the issues conclusively determined by the Canadian court. It was a threshold question, necessary to the court's decision on the merits. Shelnut had a meaningful opportunity to be heard in response to Kern's petition before the Canadian court. He admits that he was represented by Canadian counsel. He filed two pleadings contesting jurisdiction. From his responsive pleading, it is evident that Shelnut contested the jurisdiction of the Canadian court over his person for purposes of the determination of issue of maintenance. The interim order of the Canadian court ordering Shelnut to pay child support recites that the court entered its order based "upon having heard counsel on behalf of both the Petitioner and the Respondent." There is no requirement that for res judicata to bar this collateral attack, the Canadian court must list the evidence upon which it found jurisdiction over Shelnut or that the Canadian court hold a full evidentiary hearing on the issue. Shelnut submitted himself to the jurisdiction of the Canadian court for the purposes of contesting jurisdiction. The Canadian court, of necessity, ruled against him on the issue. Shelnut made no attempt to appeal the judgment of the Canadian court, waiting instead ten years for Kern to attempt to enforce the support decree in Mississippi before collaterally attacking the judgment. Shelnut testified at the hearing before the chancery court that he did not appeal the Canadian judgment because his lawyer advised him that it would cost more money and Shelnut would almost assuredly be ruled against. Shelnut's assertion that the Canadian judgment should not be enforced for want of jurisdiction is rejected. The chancellor erred as a matter of law in allowing Shelnut to relitigate the issue before the lower court.

## B. The Judgment of the Hinds County Chancery Court

¶21. Additionally, DHS argues that 1991 order of dismissal entered by the Hinds County Chancery Court should also bar litigation of the jurisdictional issue. The order is somewhat ambiguous as to exactly which action it is dismissing and on what grounds. DHS argues that the order is a conclusive determination by the chancery court that the Canadian court had jurisdiction over the parties regarding Kern's requests for a divorce, for child support, and for child custody. Shelnut contends that the order is a conclusive determination by the chancery court that the Canadian court had jurisdiction over the parties regarding only Kern's request for a divorce.

¶22. Prior to the Canadian court's determination of the petition filed by Kern, Shelnut filed two actions in the Hinds County Chancery Court. The first, a petition for child custody and support, was assigned to Chancellor Denise Sweet Owens as case number 138,362. The second, a petition for divorce, was assigned to Chancellor Robinson as case number 141, 954. Kern challenged the jurisdiction of the chancery court in the custody action. On April 2, 1990, Chancellor Sweet denied Kern's motion to dismiss, finding that the chancery court had "concurrent jurisdiction of the parties and of the subject matter" with the Canadian court. On September 20, 1990, the two actions before the chancery court were consolidated by agreement of the parties, and the child custody and support action was assigned to Chancellor Robinson along with the divorce action. On July 5, 1990, the Canadian court entered its order adjudicating the issues of child custody and child support and declaring the parties divorced. On January 8, 1991, Chancellor Robinson entered an Order of Dismissal, which stated as follows:

> This cause came on to be heard on the motion of the Defendant, Gaye-Lynn Kern Shelnut, to dismiss the Complaint for Divorce as filed by the Plaintiff, Edward E. Shelnut, and the Court having considered the motion to dismiss of Gaye-Lynn Kern Shelnut and having taken into consideration that a divorce has been entered between these parties in the Province of Saskatchewan, Country of Canada, and further finding that the marital relationship and **finding that the Canadian court had jurisdiction in that cause** found that the divorce existing between these parties in Canada was a valid divorce and further found that no purpose could be served by pursuing a divorce in the Chancery Court of the First Judicial District of Hinds County, Mississippi. The Court therefore finds that the Complaint for Divorce should be dismissed as moot.

(emphasis added). The only case number on the chancery court's order is 141,954, the number of the divorce action.

¶23. Shelnut successfully argued before Chancellor Robinson that the above order issued by him referred only to the divorce action and not to the action for child custody or support. Shelnut's attorney submitted to the court a letter written by him to his client after the order was issued explaining the contents of an unrecorded conversation which had taken place in chambers prior to the issuance of the 1991 order. The letter states:

> Judge Robinson then stated that the sequence of process notwithstanding, he felt that the issue of obtaining a divorce had already been settled in Canada. He said that as far as he was concerned, the parties were divorced. I pointed out that there was much more at issue than the simple marital status of the parties - whether they were now single or still married. I explained that there were issues of child custody, visitation and support payments. . . . Judge Robinson . . . stated that unless Gaye-Lynn

came to Mississippi and subjected herself to the jurisdiction of his Court, he would not enter any Orders enforcing the Canadian decree for child support. He also commented that unless you went to Canada and submitted to its jurisdiction, any Order here would be as a practical matter unenforceable in Canada against Gaye-Lynn.

Subsequent to the hearing regarding the enforceability of the Canadian judgment, Chancellor Robinson found that the 1991 order of dismissal was not dispositive on the issue of the personal jurisdiction of the Canadian court, but that the order was merely intended to acknowledge that the Canadian court had dissolved the marriage of the parties in the nature of an in rem action.

¶24. The face of the 1991 order of dismissal, referred only to the divorce action between the parties. The letter produced by Shelnut's attorney recounting the conversation in chambers as well as the chancellor's subsequent interpretation of his own order support this conclusion. Furthermore, though Shelnut's divorce action and child custody and support action had been consolidated, the order refers only to the divorce action, and the case number found on the order is only that of the divorce action.

¶25. It is the conclusion of this Court that the order does not constitute an adjudication of the personal jurisdiction of the Canadian court with regard to its ability to determine the issue of child support. Thus, the 1991 order of dismissal, in and of itself, did not preclude Shelnut's litigating the jurisdictional issue before the chancery court.

¶26. However, as discussed above, the Canadian court's judgment does preclude re-litigation of the jurisdictional issue.

## II. THE CHANCELLOR ABUSED HIS DISCRETION BY DENYING DHS'S REQUEST THAT KERN BE PERMITTED TO TESTIFY BY TELEPHONE.

¶27. Seven days prior to the hearing before the chancery court, DHS filed a motion to allow Kern to testify at the chancery court hearing by telephone in accordance with Miss. Code Ann. § 93-25-57(6) (Supp. 1999). Section 93-25-57 provides special rules of evidence and procedure for proceedings involving enforcement of a support pursuant to the UIFSA. Subsection 6 provides that "[i]n a proceeding under this chapter, a tribunal of this state **may** permit a party or witness residing in another state to be deposed or to testify by telephone, audiovisual means or other electronic means at a designated tribunal or other location in that state." (emphasis added). In its motion for telephonic testimony, DHS stated only that Kern should be allowed to testify by telephone because the chancery court would "be better assisted in furthering an equitable result in this cause." The motion did not state a reason as to why Kern was unable to testify in person.

¶28. The chancery court denied the request for telephonic testimony, noting that the child support arrearage alleged was substantial and that Kern should appear personally to testify. At the close of the hearing before the chancery court, DHS requested that the court enter into evidence a memorandum allegedly written by Kern which outlined the trips to Canada made by Shelnut after the couple was married. The court refused to allow the memorandum into evidence because it allowed Shelnut no opportunity to cross-examine Kern. DHS made no proffer to preserve the record for appeal.

¶29. The standard of review regarding admission or exclusion of evidence is abuse of discretion. *Thompson Mach. Commerce Corp. v. Wallace*, 687 So. 2d 149, 152 (Miss. 1997). Where error

involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party. *In re Estate of Mask*, 703 So. 2d 852, 859 (Miss. 1997); *Terrain Enters., Inc. v. Mockbee*, 654 So. 2d 1122, 1131 (Miss. 1995); Miss. R. Evid. 103(a).

¶30. DHS argues that the chancellor erred in failing to apply § 93-25-57(6). DHS states that it relied upon the fact that the chancery court would not force Kern to personally appear in Mississippi. DHS's argument is without merit. Section 93-25-57(6), by way of its permissive language, clearly vests discretion in the trial judge in accepting telephonic testimony. The language of § 93-25-57(6) reflects Mississippi case law in which this Court has stated that the admission of telephonic testimony in lieu of a personal appearance by the witness is within the sound discretion of the trial court. *Byrd v. Nix*, 548 So. 2d 1317 (Miss. 1989). There were certainly other reasonable means available to DHS to secure the testimony of Kern. The facts do not evince that the chancellor abused his discretion in not allowing Kern to testify by telephone.

¶31. DHS also contends that Kern's testimony was admissible under Mississippi Rules of Evidence 401 and 402. DHS fails to note, however, that the chancellor never ruled Kern's testimony inadmissible. To the contrary, he recognized the importance of her testifying in the proceedings - to the extent that he ordered she do so only in person. The chancellor merely ruled that Kern would not be permitted to testify by telephone.

¶32. DHS also contends that the chancellor's refusal to allow Kern to testify via telephone was clear error in violation of Miss. Code Ann. § 93-25-57(1), which provides that "[t]he physical presence of the petitioner in a responding tribunal of this state is not required for the ... enforcement ... of a support order...." This argument is misplaced. The chancellor did not require that Kern be physically present to enforce the support order. Rather, he found that she should be physically present if she wished to testify at the hearing. This Court is unable to determine whether, had Kern been allowed to testify via telephone, her testimony would have precluded the chancellor from refusing to enforce the Canadian judgment of support. DHS made no offer of proof as to what Kern would state in her testimony, and the chancellor cannot be held in error as such information never became a part of the record by proffer. *Wirtz v. Switzer*, 586 So. 2d 775, 784 (Miss.1991). DHS has failed preserve the record for appeal on this issue. This Court finds that the chancellor's error was prejudicial and therefore reversible where DHS made no proffer of the substance of Kern's testimony. *Gates v. State*, 484 So. 2d 1002, 1008 (Miss.1986).

¶33. DHS argues that Kern would have provided vital testimony regarding Shelnut's contacts with Canada which would support the Canadian court's assertion of jurisdiction over Shelnut. DHS contends that no proffer was necessary as it was clear from the context of the questions asked of Shelnut at the hearing what Kern would testify to. After examination of the hearing transcript, it is the conclusion of this Court that this contention is erroneous. This issue is barred as it was not preserved for appeal. *See Wilcher v. State*, 697 So. 2d 1087, 1095 (Miss. 1997); *Settles v. State*, 584 So. 2d 1260 (Miss.1991).

¶34. This Court finds that the issue of the Canadian court's jurisdiction is precluded by the doctrine of res judicata. Therefore, DHS has suffered no prejudice by the exclusion of the telephonic testimony, and the issue is moot.

### III. THE JUDGMENT OF THE CANADIAN COURT DOES NOT QUALIFY FOR ENFORCEMENT UNDER THE UIFSA.

¶35. Shelnut argues that because Canada had not adopted a reciprocal statute at the time the Canadian

support decree was issued, the Canadian judgment does not qualify for enforcement under the UIFSA. Shelnut is apparently suggesting an impermissible retroactive application of the UIFSA. He contends that only child support orders entered after the adoption of reciprocal statutes may be enforced pursuant to the UIFSA. Shelnut did not raise this issue before the chancery court. This issue is therefore procedurally barred. *Pickens v. Donaldson*, 748 So. 2d 684, 691 (Miss. 1999).

¶36. Alternatively, this issue is also without merit. Shelnut argues that Canada does not qualify as an "issuing state" whose support orders may be enforced under the UIFSA. Section 93-25-5(s) defines "state" to include "[a] foreign jurisdiction **that has enacted** a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this chapter, the Uniform Reciprocal Enforcement of Support Act or the Revised Uniform Reciprocal Enforcement of Support Act." (emphasis added). Shelnut argues that because Canada, at the time the Canadian court issued its judgment requiring Shelnut to pay child support, had not enacted its reciprocal enforcement act, the judgment may not now be enforced in Mississippi under the UIFSA. Canada's reciprocal support act was not passed until 1996.

¶37. In 1997, the Mississippi Legislature adopted the UIFSA and repealed URESA. This Court has stated, "URESA and the UIFSA do not, nor are they empowered to, create the duty to provide child support." *Thrift v. Thrift*, 760 So. 2d. 732 (Miss. 2000) (citing *Child Support Enforcement Div. Of Alaska v. Brenckle*, 675 N.E.2d 390, 393 (Mass. 1997)). "A review of URESA, the UIFSA and applicable case law convinces the Court that neither URESA nor the UIFSA affects substantive rights, but merely provides a procedure whereby child support orders may be enforced in foreign states." *Id.* (citing *Brenckle* at *3; *State Dep't of Human Servs. v. Jacoby*, 975 P.2d 939, 942 (Utah Ct. App. 1999)). Application of a statute which affects procedural rather than substantive rights to causes arising prior to the statute's effective date but tried thereafter is not an impermissible retroactive application. *Barnett v. State*, 725 So. 2d 797, 803 (Miss. 1998); *Christmas v. State*, 700 So. 2d 262, 271 (Miss. 1997); *Hill v. State*, 659 So. 2d 547, 551 (Miss. 1994). In fact, the application of a statute affecting procedural rights to all causes tried after the effective date of the statute constitutes prospective operation as, in such instances, the date of the trial is the reference point from which prospectivity and retroactivity are measured. Effective from and after July 1, 1997, there is nothing within the language of the UIFSA which indicating a legislative intent that the UIFSA not apply to all support orders registered in Mississippi after that date. We find Shelnut's assertions without merit.

## CONCLUSION

¶38. We find that the chancellor erred in determining that the judgment of child support issued by the Canadian court was invalid for want of personal jurisdiction over Shelnut. The judgment of the chancery court is reversed and this case remanded to the chancery court for further proceedings consistent with this opinion.

¶39. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. Shelnut does not contest that he received sufficient service of process in the Canadian action.